JOHN DRAIN, Respondent, *v.* ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY, Appellant.

**June 28, 1881.**

1. One cannot recover for an injury received while crossing a railroad track, if he failed to look and listen, unless the circumstances were such that it would have been of no avail to do so; and this, though the defendant neglected to take the statutory precautions, and was otherwise negligent in the management of its cars.

2. Failure to perform a duty enjoined by statute or ordinance is negligence as matter of law, for which a recovery may be had by any person injured by reason thereof.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Reversed and remanded.*

THOROUGHMAN & PIKE, for the appellant: A traveller approaching a railroad track is bound to use his eyes and ears, so far as there is an opportunity, and when by the use of these senses danger may be avoided, notwithstanding the neglect of the railroad servant to give signals, the omission of the plaintiff to use his senses to avoid danger is concurring negligence, entitling defendant to a non-suit.— *Gorton* v. *Railway Co.*, 45 N. Y. 662; *Fletcher* v. *Railroad Co.*, 64 Mo. 484; *Morris R. Co.* v. *Haslon*, 4 Vroom, 149; *Bunyan* v. *Railroad Co.*, 1 Dutch. 357; *Chicago R. Co.* v. *Still*, 19 Ill. 508; *Chicago R. Co.* v. *Gretzner*, 46 Ill. 74; *Railroad Co.* v. *Heilman*, 49 Pa. St. 62; *Bellefontaine R. Co.* v. *Hunter*, 33 Ind. 336.

FINKELNBURG & RASSIEUR, for the respondent: Instructions numbers 1 and 2 given on behalf of plaintiff, correctly lay down the general rule of negligence and the liability of railroads under the circumstances shown by the evidence in this case. — *Whalen* v. *Railroad Co.*, 60 Mo. 323; *Isabel* v. *Railroad Co.*, 60 Mo. 475; *Hicks* v. *Railroad Co.*, 64 Mo. 430; *Burham* v. *Railroad Co.*, 56 Mo. 338; *Frick* v. *Railroad Co.*, 5 Mo. App. 435. When a railroad company

runs cars in violation of law, it is negligence *per se*, and it is no excuse to show that by the exercise of great care and foresight plaintiff might have avoided the injury. A person has a right to rely on the presumption that railroads will operate their vehicles according to law, and if he regulates his own conduct on that presumption, he has done all that can be required of him. — *Kennayde* v. *Railroad Co.*, 45 Mo. 255 ; *Karle* v. *Railroad Co.*, 55 Mo. 476 ; *Ernst* v. *Railroad Co.*, 35 N. Y. 9 ; *Newson* v. *Railroad Co.*, 29 N. Y. 390.

THOMPSON, J., delivered the opinion of the court.

This action is brought to recover damages for injuries sustained by the plaintiff by being struck by a freight-car of the defendant while attempting to cross its railway track. The track in question was a siding which ran diagonally along Main Street in the city of St. Louis. There were also two main tracks running along the street parallel with its sides. The plaintiff worked in a wire-mill which adjoined the street in the immediate vicinity of the spot where the injury occurred. He had worked there for ten years. On February 6, 1879, at about twenty minutes after six o'clock, the plaintiff left the wire-mill to go home. He started to cross this side track and was knocked down and run over by a single freight-car, which the defendant's servants had "shunted" or "kicked" down the track by means of an engine, for the purpose of sending it into a freight-house, which stood about two hundred and twenty feet to the north of the place of the accident. There was no person upon the car, nor any light upon it, nor was any person sent in front of it to warn street passengers of its coming. The evidence is conflicting as to the rate of speed at which the car was shunted, one of the plaintiff's witnesses placing it as high as fifteen miles an hour, and one of the defendant's witnesses placing it as low as three-and-a-half miles an hour. It is not probable that it was running at a

high rate of speed, for it stopped before reaching the freight-house. An ordinance of the city of St. Louis makes it a misdemeanor to run a locomotive or cars, propelled by steam, within the limits of the city, at a greater rate of speed than six miles an hour. It also provides that when such locomotives or cars are running, the bell shall be constantly sounded within the city limits, and that, if any freight-cars or locomotives propelled by steam power be backing within said limits, a man shall be stationed on top of the car at the end of the train farthest from the engine, to give danger signals, and that no freight-train shall at any time be moved within the city limits without it be well manned with experienced brakemen, at their posts, who shall be so stationed as to see the danger signals and hear the signals from the engine.

It appears from the testimony of the plaintiff himself that he did not look or listen for approaching cars before attempting to cross the side track. He says: "I had been to work all day in the mill, and I started to go home after six o'clock; * * * I went out of the door and there was an engine coming down; I didn't know there was cars or a car attached to it — I couldn't tell. I stood still until it went past; I thought I had an opportunity, and went to cross over, and I did not know any more. *Q.* Was there anything seen or heard by you indicating the approach of a train before you got on the track? *A.* I seen the train coming down and I stood until it went past. *Q.* After that train had passed, was there anything more seen or heard by you indicating the approach of a car or train? *A.* No, sir; nothing more." On cross-examination: "*Q.* You say that one train passed you, and you saw it coming and waited until it passed? *A.* Yes, sir. *Q.* Then you thought that the way was clear, and you went to cross the track and you knew no more about it? *A.* Yes, sir. *Q.* You didn't stop to look for anything further, thinking that was the only train?

*A.* Yes, sir. That was the only train I saw. *Q.* You didn't stop to look for any more, supposing that was the only one to pass? *A.* Certainly."

The witnesses stated that it was dark, and we may take judicial notice of the fact that there is little daylight at twenty minutes after six o'clock on February 6th; but the testimony leaves no room to doubt that it was not so dark but that the plaintiff would have seen the approaching car, if he had looked. It appears that the street was flanked with buildings, and the place was probably lighted, as the streets of St. Louis usually are. Three of the plaintiff's witnesses saw the car and were able to testify as to the speed at which it was going. Two of them also saw it with sufficient distinctness to testify that there was no man on it; and another man was able to testify as to the movements of a brakeman who had uncoupled it from the engine. This brakeman had a lantern in his hand; and a flagman stood swinging a lantern at the crossing of Chouteau Avenue, about fifty feet from the place of the accident, in the direction in which the car was running.

At the close of the plaintiff's case the defendant moved for a peremptory instruction to the jury; this was refused. The defendant's evidence was heard. The case was submitted to the jury on instructions, and they returned a verdict for the plaintiff in the sum of $6,500, upon which judgment was rendered.

The practice of making what is termed among railroad men, a "running switch," or a "flying switch," which consists in "shunting" one or more cars along the track without an engine attached to them, has been, as the books show, a prolific source of accident. The shunting of a car along a track which lies within the limits of a street in the populous part of a city, with no man upon it at the brake, is very dangerous. The danger is greatly enhanced when this is done in the night-time, and during a time when other trains are moving on adjacent tracks. Leaving out of view

the city ordinance, which was introduced in evidence, the evidence shows a very clear case of negligence on the part of the defendant's servants. A compliance with the ordinance would have required that a man should be stationed on top of the car to give danger signals; and the evidence leaves no doubt that if such a man had been at his post and discharging his duty, the accident would not have happened. A failure to comply with such an ordinance makes a case of negligence as matter of law; the principle being that whenever a duty is prescribed by a statute or municipal ordinance for the purpose of promoting the safety of the public, or of any portion of it, and damages accrue to any person through a failure to perform such duty, he may maintain an action therefor. *Karle* v. *Railroad Co.*, 55 Mo. 476; *Heard* v. *Hall*, 16 Pick. 457; *Worster* v. *Bridge*, 16 Pick. 541; *Correll* v. *Railroad Co.*, 38 Iowa, 120; *Jetter* v. *Railroad Co.*, 2 Keyes, 154; *Dodge* v. *Railroad Co.*, 34 Iowa, 276; *Reynolds* v. *Hindman*, 32 Iowa, 146; *Messenger* v. *Pate*, 42 Iowa, 443; *Salisbury* v. *Herschenroder*, 106 Mass. 458; *Riddle* v. *Proprietors*, 7 Mass. 169; *Canal Co.* v. *Graham*, 63 Pa. St. 290; *Railroad Co.* v. *Patterson*, 73 Pa. St. 491; *Harrison* v. *Railroad Co.*, 3 Hurl. & Colt. 231; *s. c.* 33 L. J. (Exch.) 266; *Bayley* v. *Water - Works*, 6 Hurl. & N. 241. Indeed, it is not claimed on the part of the defendant that a case of negligence is not made out against it. The only question in the case is, whether the plaintiff was guilty of contributory negligence, and whether this was shown with such conclusiveness as required the court to take the case from the jury.

Upon this question our Supreme Court has declared, in conformity with the almost universal current of authority, that when a traveller approaches a railway track, it is his duty to look and listen for approaching trains; and if he attempts to cross without doing this, and is struck by a train and injured, he cannot recover damages, unless the circumstances were such that looking and listening would not

have enabled him to discover the approaching train; that this is so, although those in charge of the approaching train may have neglected the statutory precautions, or may have been otherwise negligent in the manner of propelling the train; and that where it appears that a traveller thus injured did not thus make use of his faculties, when to do so would have enabled him to perceive the danger, it is the duty of the court to direct a verdict for the defendant. *Fletcher* v. *Railroad Co.*, 64 Mo. 484; *Harlan* v. *Railroad Co.*, 64 Mo. 480. See also *Zimmerman* v. *Railroad Co.*, 71 Mo. 476; *Railroad Co.* v. *Houston*, 95 U. S. 697; 1 Thomp. on Neg. 426. This case, in its facts, resembles the case of *Harlan* v. *Railroad Co.*, *supra*, and is clearly governed by the principle there laid down. There, a person stepped out from behind a train of cars upon a side track to cross another track seven feet away, and was run over by a "pony" engine and killed. He could have heard the engine if he had listened. It was held that, although the bell was not sounded as required by law, yet the failure to listen was negligence *per se*, and there could be no recovery.

Our views upon this exception to the foundation of the plaintiff's case render it unnecessary to consider the propriety of the other instructions given and refused.

The judgment must be reversed and the cause remanded. All the judges concur.