JAMES BURKE, Appellant, v. CITY OF KANSAS, Respondent.

Kansas City Court of Appeals, March 4, 1889.

1. **Practice** : ORDER ALLOWING NEW TRIAL SHALL SPECIFY OF RECORD THE GROUND THEREFOR : WHAT CONSIDERED ON APPEAL. The act of March 22, 1887, provides that every order allowing a new trial shall specify of record the ground therefor, and, on appeal alleging as error the granting of the new trial, such ground if specified of record, will not be regarded as mere surplusage ; and, to warrant a reversal, it is not incumbent on appellant to show that the new trial could not have been legally and properly granted for either of the reasons set out in the motions for a new trial or in arrest ; and where the reasons specified are "That on the petition and facts as presented by plaintiff in the cause, the city is not liable," this court will consider the question whether the pleadings and the facts warrant a recovery by plaintiff.

2. **Contracts** : EXECUTION OF, ACCORDING TO DIRECTION OF CITY ENGINEER. The contract between plaintiff and the defendant city required him to build a sewer "according to such directions as the city engineer of the said City of Kansas may from time to time give in superintending the construction of the work, and according to the plans and specifications on file in the office of the city engineer, prepared for the letting of the contract for such work," and in addition clothed said engineer with large powers in refusing and rejecting material and work and in annulling the contract and suspending work thereunder, and in the dismissal of disobedient workmen ; and the city was not to be otherwise liable to pay than by the issue of certified bills of assessment ; the plaintiff while performing said work laid certain pipes above the grade required by the plans and specifications, being so directed, as he claimed, by the assistant engineer in charge. Upon the change of the assistant engineers, he was required to, and did, take up said pipes, sink the trenches deeper and replace the pipes, and brings this action for this extra work. *Held*—

  (1) That the undertaking of the plaintiff in this contract was that he would construct the sewer as stipulated in the plans and specifications.

  (2) "According to such directions," therefore, "as the city engineer may from time to time give in superintending the work," should be construed to mean such directions as he may give looking to a completion of the work according to, and not different from, the plans and specifications.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*C. A. Kenyon* and *John W. Snyder*, for appellant.

(1) When the city, through its common council, confirmed by ordinance, the written contract made by its engineer with the plaintiff's assignor, the city was bound by a most perfect and complete and legal contract. *Bank v. Patterson*, 7 Cranch, 299 ; *Township v. Township*, 2 Iowa, 506. (2) Under the contract plaintiff agreed to construct a sewer "according to the direction" of defendant's "engineer" "and according to plans and specifications." Plaintiff assumed to follow such directions as to grades, and defendant assumed the duty of giving plaintiff correct grades. *Railroad v. Howard*, 13 How. 307 ; *Railroad v. Van Dusen*, 29 Mich. 445. (3) This contract must be construed exactly as if the city was an individual. *Davis v. Gray*, 16 Wall. 204–230, 231 ; *College v. Woodward*, 4 Wheat. 518. (4) This contract should be enforced exactly as if the city was an individual. *The State ex rel. v. Walker*, 88 Mo. 282. Municipal and other corporations are as much within the law of estoppel as individuals. Bishop on Contracts [Enlarged Ed.] 310 ; *Union Depot Co. v. St. Louis*, 76 Mo. 393 ; *Cook v. Holmes*, 108 Ill. 151 ; *Buena Vista v. Railroad*, 46 Iowa, 226 ; *Sexton v. City of Chicago*, 107 Ill. 333 ; *Moore v. Mayor*, 73 N. Y. (5) By this contract, the plaintiff's assignor contracted to dig the sewer as deep as the plans and specifications, as interpreted to him by the defendant's engineer, required. "All the parts of the contract will be construed in such a way as to give force and validity to all of them, and to all the language used, where that is possible." 2 Pars. Cont. [7 Ed.] side

paging 505, and cases there cited ; Bish. Cont. [Enlarged Ed.] sec. 384 and cases there cited.   It is a rule that the whole contract should be considered in determining the meaning of any or of all its parts. 2 Pars. Cont. [ 7 Ed.] side paging 501, and cases there cited ; Bish. Cont. [Enlarged Ed.] sec. 382 and cases cited.   (6) Again, said construction of contract must be allowed, or an unreasonable one must be made.    For if the contractor was not to follow the city engineer's construction of the plans and specifications, he must follow his own ; he must therefore hire a private engineer ; the two engineers may differ ; if he follows the city engineer he loses ( because he is not following the plans and specifications, as he beholds them through the eyes of his own engineer ) ; and if he refuses to follow him, he is discharged.   A contract never received an unreasonable in preference to a reasonable interpretation.   2 Blackstone, Chitty [ 9 Ed.] side paging 379 ; *Chamberlain v. Railroad*, 6 Cent. Rep. ( Md.) 471 ; *Hildebrand v. Bloodsworth*, 12 O. 75 ; *Railroad v. Jurey*, 3 U. S. 584. (7)   The further fact that the defendant, through its engineer, his assistant, and its inspector, kept constantly supervising the work, and that their directions were followed by the plaintiff, establishes the fact that the parties to the contract put the same interpretation upon this contract, that the plaintiff does.   Said interpretation must be followed in this litigation.   *Lyles v. Lescher*, 7 W. Rep. ( Ind.) 53 ; *People v. Murphy*, 6 W. Rep. ( Ill.) 721 and at page 724; *Tapliff v. Tapliff*, 30 U. S. ( L. Ed.) 110 ; *Schmitz v. Scheifele*, 5 Cent. Rep. ( N. J.) 832 ; *Trotter v Heckscher*, 13 Steir Eq. 612 ; *Gas Co. v. St. Louis*, 46 Mo. 127 ; *Edwards v. Smith*, 63 Mo. 119.   (8)   The two New York cases ( *Brady v. The Mayor*, 20 N. Y. 312, and *Bonesteele v. The Mayor*, 22 N. Y. 162 ) relied on by defendant in the trial court are not in point ; in both of these cases the city's agent openly broke the law and the plaintiff knew it ( actually

or constructively, as it was a matter of law ) whilst in this case the plaintiff did not know it (as the jury found, and the question of actually knowledge is no longer in this case ) and could not be constructively informed [ as it was a point of fact and not of law ] and could not have learnt it by reasonable care or the custom of contractors. (9) Inasmuch as this appeal was taken by the plaintiff alone, the only point that can be considered by this court is as to whether the trial court was right in arresting the judgment and granting a new trial, on the reasons given by the trial court, to-wit: That on plaintiff's petition and evidence there was no cause of action. *Hurd v. Ascherman*, 5 W. Rep. 896.

*R. W. Quarles, W. A. Alderson*, for respondent.

(1) Judgment having been rendered for the appellant, respondent's motion for new trial and in arrest of judgment having been sustained and the cause dismissed, the appellant proceeded in the manner declared to be proper in the case of the *Bank v. Armstrong*, 92 Mo. 265. We invoke the rule, firmly imbedded in the jurisprudence of this state, and repeated and again affirmed in the case cited : "That the granting or refusing of new trials for the reason that the verdict is against the weight of the evidence rests peculiarly with the judge presiding at the trial, and that his discretion in this particular will rarely be interferred with, unless it plainly appears that injustice has been done, or that it has been unsoundly or arbitrarily exercised." *Wright v. Railroad*, 20 Mo. App. 481, 484; *McKay v. Underwood*, 47 Mo. 185, 187; *McDonough v. Nicholson*, 46 Mo. 35; *Eidemiller v. Kump*, 61 Mo. 340, 342; *Cook v. Railroad*, 56 Mo. 380, 384; *Reed v. Ins. Co.*, 58 Mo. 421, 429; *Whittsett v. Ransom*, 79 Mo. 258. (2) A new trial should be granted by the trial court where the verdict is manifestly against the weight and the entire current of the testimony. *Taylor v. Fox*, 16 Mo. App.

527, 531 ; *Clark v. Fairley*, 30 Mo. App. 335, 338.
(3) The trial court may grant a new trial because it may
think it likely that on another trial the verdict would
be different.   *Bragg v. Moberly*, 17 Mo. App. 221, 226.
(4) The presumption is that the decision of the trial
court in granting a new trial is right, and the party
objecting to it must show to the contrary.   *Goode v.
Crow*, 51 Mo. 212 ; *State v. Sullivan Co. Court*, 51 Mo. 522,
529 ; *Porth v. Gilbert*, 85 Mo. 125 ; *Bank v. Armstrong*,
92 Mo. 265, 278.    (5) The objections are made in
respondent's motion for new trial that the verdict was
against the evidence, and wholly unsupported by the
evidence.  This court will not entertain the question
concerning, or consider the action of the trial court in
this particular, unless all the evidence is submitted.
The appellant has filed simply an abstract of the
evidence.   *Hughes v. Vanstone*, 24 Mo. App. 637, 642 ;
*Cuomo v. St. Joseph*, 24 Mo. App. 567, 570 ; *Goodson v.
Railroad*, 23 Mo. App. 76, 81.   (6) The contract between
the appellant and the respondent required that the
sewer should be constructed " according to the plans
and specifications on file in the office of said city
engineer."   And because the respondent compelled the
appellant to so construct the sewer, the former is asked
to pay the latter fifteen hundred dollars.   Conceding
that Felix, the assistant engineer of the respondent
city, did give the appellant the wrong figures for the
depth of the sewer, yet the respondent is not liable in
this action.   Neither intentionally nor by mistake could
any officer of the respondent change the contract
between it and the appellant.   In support of this
proposition we ask the careful consideration of the
following adjudication :   *Bonesteele v. The Mayor of
New York*, 22 N. Y. 162.

GILL, J.—At the trial of this action before the
circuit court the plaintiff had a verdict and judgment
for fifteen hundred dollars.   The defendant filed its

motions for a new trial and, in arrest, and upon hearing and consideration the circuit court sustained the same, incorporating in the record the reasons therefor, to-wit ·

"That on the petition and facts as presented by plaintiff in the cause, the city is not liable." To this action exception was saved and the plaintiff refused further to prosecute his suit, a final judgment was entered and the plaintiff now seeks a reversal, alleging as error the action of the court in granting a new trial.

I.   Respondent's counsel contend that to warrant a reversal of this cause it is incumbent on the plaintiff to show that the new trial could not have been legally and properly granted for either of the numerous reasons set out in the motions for new trial or in arrest. In other words the contention is, "that the statement, that the motions were sustained, is in itself a complete entry, and the words showing a reason for sustaining them are mere surplusage," etc. We think the city counsellor is in error in this position as applied to this cause. Beyond the consideration of any statute we quote the apt words of plaintiff's counsel, in his argument in reply, wherein the reasons of public policy are invoked.

"Again, public policy favors the appellant's contention. The sharpening of issues, and throwing out mock combats, is a blessing to courts, litigants and the public. The defendant, in this very case, advances twenty-four reasons for defeating the plaintiff, and if appellant must take them up, *seriatim* and with a serious face, not only must all the record be printed in this and every other case (that is appealed in this way), but a law book must be written to cover the field of jurisprudence, and sent up as a brief."

The assignment of reasons for sustaining a motion for new trial is not surplusage, as contended by defendant's counsel, but the court, in so doing, obeyed the direction of positive law.

By the act approved March 22, 1887, it is in terms provided that "every order allowing a new trial shall

specify of record the ground or grounds on which said new trial is granted." Laws of 1887, p. 230.

It is a matter of regret that we have not other rules and statutes tending towards the "sharpening of issues and throwing out mock combats."

We proceed now to review the action of the trial court in sustaining the motions for new trial and in arrest in the cause at bar, on the grounds " that on the petition and facts as presented by plaintiff in the cause, the city ( defendant ) is not liable."

II. This action of the trial court was, in effect, sustaining a demurrer to plaintiff's case as made at the close of his evidence. Although the court was a little tardy—having waited until the case was presented on both sides and a verdict rendered.

Still the trial court has declared that, on his petition and evidence adduced, the plaintiff was not entitled to recover. The question is, did the pleadings and the facts presented by the plaintiff warrant a recovery ?

The defendant on March 21, 1882, entered into a written contract with the plaintiff's assignor. By this contract the plaintiff's assignor was to build a district sewer " *according to such directions as the city engineer of said City of Kansas may from time to time give in superintending the construction of the work, and according to the plans and specifications on file in the office of the said city engineer*, prepared for the letting of the contract for such work." Said contract was confirmed by the defendant, by an ordinance, on the next day.

Said contract further states : "The City of Kansas hereby expressly reserves to her city engineer the right to refuse or reject, at any time during the progress or at the completion of the job, any work done or material furnished, which *in his opinion* may not be in *strict compliance* with this agreement; and also expressly reserves to her city engineer the power of suspending or

annulling this contract, or suspending the doing of the work thereunder, at any time, for any failure on the part of said party of the first part to fulfill the same, or other good cause, or for the reason that the interest of said city may demand such annulment or suspension ; and any action of the city engineer, in suspending or annulling this contract, or suspending the doing of the work thereunder, and *his decision* as to the existence or cause for such annulment or suspension *shall be conclusive* as to the existence of such cause or reason in any controversy or litigation between the parties hereto or others claiming under them."

Said contract states : "The said party of the first part shall discharge from the work any workman who shall *disobey any direction of the city engineer*, as to the workmanship or material therefor, given in superintending the work."

Said contract states : "It is also expressly agreed that the passage of said ordinance and the doing of said work, without any petition or any proper petition therefor, shall not render the city liable to pay, directly or indirectly, for said work, or any part thereof, otherwise than by the issue of certified bills of assessment ; and said party of the first part shall assume all risks as to the validity or invalidity of such certified bills of assessment, and take the same without recourse against the City of Kansas in any event."

Said contract states . "This contract shall be subjected to the existing charter and ordinances of the City of Kansas, and subject to the power of the common council of said city to approve or reject the same, and shall not bind until so approved."

The nature of the "plans and specifications on file in the office of the city engineer," referred to in the foregoing contract, is exposed by the evidence of engineer Donnelly, in answer to questions by counsel at the trial, as follows :

"A. When the plan of a sewer was prepared by the engineer for any particular district, the engineer first prepared a plan showing a sketch of the land to be taxed, or the district, as we call it, and the location, depth and number of sewers in that district. That being recommended to the council, they passed an ordinance providing for the creation of that sewer district and the construction of the sewer, which was usually created according to the plans first prepared. Then the contract and specifications both referred to that plan and were based upon it.

"Q. So that, to make an intelligent bid the contractor came to the city engineer's office and looked at the profile, which showed not only the street itself, but the depth, length and each kind of pipe, or brick, how many man-holes, how many catch-basins, etc. ?

"A. Yes, sir ; every thing was stated on the plans.

"Q. Then, Mr. Donnelly, knowing these plans and what was in the office at that time, explain to the jury what extra information the contractor would have when he came to make a bid, if any, from what the book shows and the specifications, so as to make a bid on the work in question ?

"A. He would have the information that those plans show. He would have the depth at every man-hole and every place indicating the depth of the sewer.

"Q. Also the average cut and the average kind of pipe?

"A. Yes, sir ; he would see every thing. It showed a vertical section of the line of the sewer, which would show the depth and, as far as we could tell, the material which would be encountered."

The evidence is uncontradicted, that the plans and specifications, provided for the work in question, were as perfect in detail as defined by the evidence of witness Donnelly.

Such plans and specifications gave intelligently and correctly, among other matters, the depth of the trenches to be dug throughout the entire length of the proposed sewer.

Now it seems, as is usual in the prosecution of such public work at Kansas City, the engineer detailed one Felix, an assistant, to look after the construction of the sewer. The work was being prosecuted, and some six hundred feet of trenches had been dug, and some pipe laid in place, when there was a change in engineers.

Felix was removed and Baker, another assistant city engineer, was substituted in charge of the work. Mr. Baker very soon discovered that the plaintiff was not laying the sewer pipes at the proper depth, that the trenches were not so deep as the plans and specifications provided, and thereupon plaintiff was required to take up the pipes already placed and sink the trenches deeper, which was done; and for this extra cost, in re-constructing this portion of the sewer, this action was brought. It is unquestionable that the portion of the sewer thus re-constructed had not been placed so deep in the ground as the plans and specifications for the work in the engineer's office required. However, the plaintiff claims, and produced evidence tending to show, that such construction was placed just the depth required by Felix, the assistant engineer. He insists that, as he followed the instructions of the engineer in digging the sewer trench, he was complying with the terms of the contract, and if instructed wrongfully, and he has been thereby injured, he ought to recover by reason of such wrong directions.

This brings us now face to face with the difficult question of this case. The principal controversy arises as to what are the contractual obligations of the plaintiff and defendant under the provisions of the agreement whereby the contractor agrees with the City of Kansas *"to do and complete said work  *  *  *  according to such directions as the city engineer may from time to*

*time give in superintending the construction of the work, and according to the plans and specifications on file in the office of said city engineer prepared for the letting of the contract for such work,"* etc.

How far now shall the contractor go in following the directions of the city engineer ? Was the plaintiff in duty bound to pursue the instructions of the city engineer, even though in so doing he depart from the the plans and specifications, which he contracted to carry out? We think not. It is a well-known rule that in the construction of any written contract, it should be so construed as to harmonize, if possible, all its provisions and so as to avoid all conflicts.

The undertaking of the plaintiff in this contract was that he would construct the sewer as *stipulated in the plans and specifications.*

The plans and specifications were to be followed just as zealously as if incorporated in the body of the agreement. Those plans and specifications provided the *depth* at which the sewer should be placed, just as they provided for the size of the *pipes* to be used.

If then the engineer could depart from the terms of the contract as to the *depth* of the sewer, why could he not substitute a smaller for a larger sewer pipe, permit, for an example, a twelve-inch for an eighteen-inch sewer pipe, when the contract required the larger? This would admit the power in the engineer, while merely superintending the construction of the work, to change, or modify, the contract. This the engineer cannot do. And, as he cannot change or modify the contract as to the one stipulation therein relating as to the size of the pipe used, it follows that he cannot change its terms as to the depth at which it shall be placed.

"According to such directions, therefore, as the city engineer may from time to time give in superintending the construction of the work" should be construed to mean such directions that he may give looking to a completion of the work *according* to the plans and

specifications, and not to mean that the engineer may give directions for an improvement in manner *different* from that provided in the plans and specifications. It is made the duty of the engineer under the contract to see that the contract is *complied* with, not *violated.*

At this point of construction of this sewer the plaintiff had agreed to sink the sewer to a certain grade beneath the surface, and he was bound to comply with that agreement, unless relieved by a new agreement emanating from an authority capable of making such a contract.

The plaintiff, in the end, did under the contract just as he agreed to do. He placed the sewer at the grade he agreed, in the first place, it should be placed, and received his pay therefor, in tax-bills, as the law and the contract provided. We conclude, therefore, as was decided by the circuit court, "that upon the petition and the facts, as presented by the plaintiff in the cause, the defendant city is not liable." For an authority in point see *Bonesteele v. Mayor,* 22 N. Y. 162. Judgment affirmed. The other judges concur.