John J. Steffen, Respondent, v. Sarah Isabel Fox
et al., Appellants.

St. Louis Court of Appeals, January 2, 1894.

1. **Special Tax Bill**: MATERIALITY OF NON-COMPLIANCE WITH CONTROLLING ORDINANCE. A general ordinance of the city of St. Louis regulated the slant of sidwalks in the city, and declared a violation of its provisions a misdemeanor. A sidewalk was constructed at the intersection of two streets having different grades. The trial court found that, owing thereto, a literal compliance with the ordinance was impracticable, and that a deviation therefrom, made at the direction of the representative of the city, did not render the work less valuable to the adjoining property, nor less convenient, passable and safe for public use. *Held*, BOND, J., dissenting, that this deviation was immaterial.

2. ———: ———: APPORTIONMENT OF SPECIAL TAX. The deviation referred to occurred only in a small portion of the sidewalk. *Held*, by BOND, J., that a special tax bill issued for the entire work was apportionable, and that, though invalid to the extent to which it represented work done in violation of the general ordinance, it was enforcible for the remainder of the tax.

*Appeal from the St. Louis City Circuit Court.*—HON.
JACOB KLEIN, Judge.

AFFIRMED AND CERTIFIED TO SUPREME COURT.

*Hiram J. Grover* for appellants.

*Rassieur & Schnurmacher* for respondent.

ROMBAUER, P. J.—The action is one upon a special tax bill for constructing a granitoid sidewalk in front of the property of the defendants on the northeast corner of Eighth and Market streets in the city of

St. Louis. The petition sets out the various ordinances of the city under which the work was done, the completion of the work and the issuance of the special tax bill to the plaintiff.

The substantial defense made by the answer is that the work done was illegal and void, because done in contravention of an ordinance of the city providing among other things:

"Hereafter no sidewalk shall be constructed, the cross-grade of which, or rise from the curb line, shall be greater than one-half inch vertical rise to one foot horizontal distance; and in each instance the curb line shall be maintained at its correct elevation above the city directrix, which shall be determined from the construction of the particular street in question." The ordinance also provides that the violation of the ordinance by any one shall be a misdemeanor, punishable by fine.

The trial of the cause by the court without the intervention of a jury resulted in a judgment for plaintiff. The defendants appeal, and assign for error the action of the court in refusing to nonsuit the plaintiff, as requested, and the giving of erroneous declarations of law by the court on its own motion. As the declarations of the law given by the court show the theory of the law applied by the court to the evidence, which is the only object of such declarations where a cause is tried by the court, they will be fully set out hereinafter.

On the trial there was evidence tending to show that there was a difference between the grade of Eighth street and that of Market street, at the point of their intersection at this corner, of five and one-half inches; that owing to this difference it was *impossible* to comply literally with the provisions of the ordinance above set out, unless a jog or set-off were constructed run-

Steffen v. Fox.

ning from the apex of the curb at the intersection of the two streets to the apex of the building line on the corner of the two streets; that, in order to avoid such a jog or set-off (the danger of which to passengers along the sidewalk seems imminent), the plaintiff, under the direction of the city inspector, constructed the fan-shaped portion of the sidewalk at the corner with a grade several inches in excess of that permitted by the ordinance. The evidence tended to show that the residue of the sidewalk was constructed in strict conformity with the provisions of the ordinance. There was also evidence tending to show that the construction of the sidewalk in the manner in which it was constructed was the nearest practicable approach to the requirements of the ordinance, in case the sidewalk was to consist of a continuous plane without any jog or set-off, and that neither the value of the sidewalk as such, nor the danger to pedestrians using it, was materially affected by this slight variation in the grade.

At the request of the defendants the court first declared that there was no evidence before it to show that it was a physical impossibility to construct the sidewalk in question in conformity with the requirements of the ordinance, or to show that the requirements of the ordinance were unreasonable. However, to the other declarations of law asked by the defendants, which announced, in substance, that, unless the sidewalk was constructed in conformity with the provisions of the ordinance, the plaintiff could not recover, the court added the following qualifications:

"Unless the court shall further find from the evidence that the established grade of Market street and Eighth street, at their intersection, where the pavement in question was to be constructed, was such that such pavement *could not be made to conform strictly to*

*the provisions of said ordinance number 11558 without making such pavement unsafe and inconvenient to the general public having occasion to use the same.*

"And if the court shall further find from the evidence that, owing to the inequality of the established grade of said streets (if the evidence shows such inequality to exist), it was found *impracticable and inexpedient* to lay and construct said pavement at the intersection of said streets, and immediately north thereof, *in strict conformity with the literal provisions of said ordinance number 11558*, and that plaintiff thereupon called upon the city official having charge and supervision of said work, and thereafter followed the directions of said official in the construction of said pavement, and that the same is not by reason of any deviation from the literal provisions of said ordinance number 11558, *less valuable* to the defendants' property, *nor less convenient*, safe and passable for public use, then the plaintiff is entitled to recover."

While the evidence is conflicting touching the value of the sidewalk as constructed, compared with a sidewalk constructed in literal compliance with the ordinance, there is substantial evidence supporting the finding of the court that the sidewalk, as constructed, was not less valuable to the owner, nor less safe and convenient to the traveling public, than the sidewalk would have been if constructed in literal compliance with the ordinance. If the plaintiff's witnesses are to be credited, a sidewalk constructed in literal compliance with the ordinance would have created a dangerous nuisance on a much frequented thoroughfare. Such being the case, the law as declared by the court is not subject to any just exception. A *substantial* compliance with the law is essential as a *foundation of the plaintiff's right of recovery* in these cases, but a *literal* compliance has never been deemed essential for

that purpose. The latter, at most, affects the *extent*, and not the *right* of recovery. *City of St. Joseph v. Anthony*, 30 Mo. 537; *Sheehan v. Owen,* 82 Mo. 458. As was very aptly said by Judge BLACK in *Cole v. Skrainka*, 105 Mo. 303: "This court has never adopted the extreme view that, in order to recover for these local improvements, the plaintiff must show a literal compliance with all the provisions of the ordinances. Distinction must be made between those matters which affect the substantial rights of the parties and those which are formal and directory."

The cases cited by appellant in no way militate against this position. In *Keane v. Cushing*, 15 Mo. App. 96, and *Keane v. Klausman*, 21 Mo. App. 488, the work was done before any ordinance authorizing it was passed. In *Bourke v. City of Kansas*, 34 Mo. App. 579, the work was completed strictly in conformity with the directions of the ordinance, and the only point for decision was whether the engineer could bind the city in misdirecting the performance of the work, by which the contractor was subjected to additional outlays and which admittedly could not be charged against the adjoining property.

With the concurrence of Judge BIGGS the judgment is affirmed. As Judge BOND, who dissents, is of opinion that the decision is opposed to the cases cited in his dissenting opinion, the case will be certified to the supreme court for final adjudication. So ordered.

BOND, J. (*dissenting*).—This action was brought to enforce the lien of a special tax bill for granitoid reconstruction of sidewalks in front of the property of appellants. Respondent did the work in question under a contract with the city of St. Louis authorizing the same upon default of the property owners, after due notification, to reconstruct the sidewalk in front of their prop-

erty. The other facts, showing a cause of action in respondent, were alleged in the petition. After a general denial appellants interposed the special defense, that said sidewalk was not constructed under or in pursuance of "the terms of the charter or any ordinance of the city of St. Louis, nor in compliance with any contract between the city of St. Louis and respondent;" that the work referred to in said tax bill "was not done in a good workmanlike manner, nor in accordance with the requirements of the ordinance of the city of St. Louis pertaining to the construction of sidewalks, but was done in direct contravention and violation of the terms of city ordinance number 11558, approved January 31, 1881, which ordinance is as follows, to-wit:

"An ordinance to regulate the cross-grade of sidewalks."

"Be it ordained by the municipal assembly of the city of St. Louis, as follows:

"Section 1. Hereafter no sidewalk shall be constructed, the cross-grade of which, or rise from the curb line to the building line, shall be greater than one-half inch vertical rise to one foot horizontal distance; and in each instance the curb line shall be maintained at its correct elevation above the city directrix, which shall be determined from the construction of the particular street in question.

"Sec. 2. *Any person who shall himself violate, or by another cause to be violated, the foregoing section of this ordinance, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty-five dollars nor more than five hundred dollars.*"

Appellants averred that this ordinance was part of the contract, if any existed between the city and respondent, and that, by reason of its violation by respondent in constructing the sidewalk at a cross-

grade much higher than that limited in the ordinance, a dangerous and illegal sidewalk had been placed in front of their property, exposing persons using the same to peril and subjecting appellants to liability to damages for injuries to persons using the same; and that, while the work was progressing, appellants warned respondent that the same was in violation of said ordinance, and that they would not pay the cost thereof. Wherefore appellants prayed for judgment.

On the trial respondent offered in evidence the special tax bill in suit, and, after proving demand of payment, rested. Appellants thereupon introduced a former city engineer of thirty-five years' experience, who testified that he had measured the vertical rise of the granitoid reconstruction of the sidewalk, for which the special tax bill was issued, at two places; that he made these measurements to "ascertain what the fall of the sidewalk was from the building line on the Fox property to the curb;" that, at the intersection of Eighth and Market streets, the "rise from the curb to the sidewalk at the building line on Market street is eleven and three-fourth inches, and nine feet further north on Eighth street is ten and three-fourth inches;" that the sidewalk at both places is twelve feet wide; and that, allowing one and one-half inches for thickness of sidewalk at the curb, the above measurement would show a vertical rise of ten and one-fourth inches and nine and one-fourth inches for the twelve feet of width of sidewalk. The evidence disclosed that the increase in the vertical rise of the sidewalk over a rise of one-half inch to a horizontal foot *materially increased* the danger of slipping and injury to persons using the street. The evidence was conflicting as to whether or not the method of reconstruction adopted by the contractor, though not in conformity with the limitations of the ordinance as to

the vertical rise of the pavement, was equally as safe and convenient as if it had complied with the terms of the ordinance.

The case was tried by the court sitting as a jury, from whose finding this appeal was taken by defendants. At the request of appellants the following finding of fact and declarations of law were given:

"The court, sitting as a jury, is bound to assume that ordinance number 11558 of the city of St. Louis did not provide an impossible or unreasonable method and standard for the construction of sidewalks in said city; on the contrary, the court assumes that all sidewalks to be constructed in said city after the adoption of said ordinance could be constructed in conformity with the method and standard fixed by said ordinance. And the court declares that there is *no evidence before it* to show that it was a physical impossibility to construct the sidewalk in question in conformity with the requirements of said ordinance, or to show that the requirements of said ordinance *were unreasonable.*"

Appellants thereupon requested the court to declare the law in substance that, if the sidewalk was reconstructed at a greater vertical rise per horizontal foot than permitted by the ordinance, such violation of said ordinance precluded any recovery on the tax bill in suit; that said ordinance was a part of respondent's contract with the city for the reconstruction of appellants' sidewalk; that the said ordinance was mandatory, and that respondent could not have been required by the city to construct the sidewalk in violation thereof, and, if he did so, he could not recover.

The court refused to give declarations of law embodying only those requests, but of its own motion, over appellants' objection, gave them substantially with the following proviso:

"Unless the court shall further find from the

evidence that the established grade of Market street and Eighth street, at their intersection, where the pavement in question was to be constructed, was such that such pavement could not be made to conform strictly to the provisions of said ordinance number 11558, without making such pavement unsafe and inconvenient to the general public having occasion to use the same.

"And if the court shall further find from the evidence that, owing to the inequality of the established grade of said streets (if the evidence shows such inequality to exist,) it was found impracticable and inexpedient to lay and construct said pavement at the intersection of said streets, and immediately north thereof, in strict conformity with the literal provisions of said ordinance number 11558, and that plaintiff thereupon called upon the city official having charge and supervision of said work, and thereafter followed the direction of said official in the construction of said pavement, and that the same is not by reason of any deviation from the literal provisions of said ordinance number 11558 *less* valuable to the defendants' property, nor *less* convenient, safe and passable for public use, then the plaintiff is entitled to recover."

The point on this appeal is whether or not the trial judge erred in giving the declarations of law requested by appellants, coupled with the conditions thereto quoted above. There can be no doubt that a special tax bill issued for work done under contracts let by the Board of Public Improvements in pursuance of *ordinances recommended by that board,* and passed by the city, may become an enforceable lien upon the property charged therewith. Scheme & Charter, article 6, secs. 15, 24, 25; *Farrar v. City of St. Louis,* 80 Mo. 390. It is equally clear that it is not essential to a

recovery upon such special tax bills that there should have been a literal compliance with all of the terms of the contract of letting, and the *ordinance recommended by the board*, providing for the doing of the work. It is only necessary to such recovery that the contract and the ordinance, under which the work was done, should have been in all material respects performed and obeyed. *Cole v. Skrainka*, 105 Mo. 309; *Sheehan v. Owen*, 82 Mo. 458; *Galbreath v. Newton*, 30 Mo. App. 380; *Creamer v. Bates*, 49 Mo. 523; *City of St. Joseph v. Anthony*, 30 Mo. 537. If the case at bar presented a question of *immaterial variance* between the work of the contractor and the specifications of his contract as to size, etc., of materials to be used, or the general regulations of the recommendatory ordinance under which the work was authorized to be done, the question to be determined would *then* be, whether respondent complied *substantially* with his contract with the city containing the specifications of the ordinance, recommended by the Board of Public Improvements, for the doing of the particular work. And that question would be resolved, as in all cases of suits on contracts, by a finding of the issue thus presented, whether or not respondent had disregarded his contract "in any material respect."

*No such question is presented, nor can such issue arise, in the case at bar.* The defense in this case is, that the work has been done in violation of a *general ordinance* of the city making it a misdemeanor to do such work *contrary* to its provisions, and subjecting the offender to a fine of from $25 to $500. This general ordinance, if valid, is a part of the law governing every inhabitant of the city, and necessarily controlled respondent's contract. It was admitted that a portion of the sidewalk was reconstructed in violation of its prohibition limiting the vertical rise of the

cross-grade of sidewalks to one-half inch per horizontal foot. Upon this state of the record the question therefore arises, whether the city contractor could lawfully construct the sidewalk in violation of the general ordinance, *supra*, and thus create a lien by special tax bill on abutting property. To determine this it will be useful to recur to certain legal principles governing municipalities in the use of streets and sidewalks, and regulating their liabilities for defects therein, and authorizing them to enact ordinances and by-laws.

The municipalities of this state have an easement in the streets and sidewalks within their limits, and may apply them to all uses necessary to their full enjoyment by the public. *Julia Building Ass'n v. Bell Telephone Co.*, 88 Mo. 258, 268. This power of control makes it the duty of such municipalities to *provide* reasonably safe sidewalks for the use of the public; for failure to do so they are primarily liable, and they cannot by any act of their own impose that liability on others. *Blake v. City of St. Louis*, 40 Mo. 570; *Norton v. City of St. Louis*, 97 Mo. 537; *Walker v. City of Kansas*, 99 Mo. 652; *Roe v. City of Kansas*, 100 Mo. 193; *Smith v. City of St. Joseph*, 42 Mo. App. 398; *Charter of City of St. Louis*, art. 3, sec. 26, subsection 14; Dillon on Municipal Corporations [4 Ed.], sec. 1012; *Welsh v. City of St. Louis*, 73 Mo. 71. Ordinances passed to secure the safety and welfare of the public in the use of sidewalks and streets are in the discharge of this duty of municipalities, and, where they are in furtherance of charter powers and not inconsistent with the laws and constitution of the state, they have all the force of acts of the state legislature. *State ex rel. Reid v. Walbridge*, 24 S. W. Rep. 457; *St. Louis v. Schoenbush, unreported; City v. Howard*, 24 S. W. Rep. 770, 772; *Taylor v. City of*

*Carondélet*, 22 Mo. 105; *City of St. Louis v. Foster*, 52 Mo. 515; *Hopkins v. Mayor of Swansea*, 4 M. & W. 621, 640; Dillon on Municipal Corporations [4 Ed.], sec. 308.

A contract in *violation* of the provisions of a statute, or valid ordinance, cannot be enforced. *Sprague v. Rooney*, 104 Mo. 357, *et* citations; Dillon on Municipal Corporations [4 Ed.], sec. 308 and note.

Municipal corporations possess a double character; "The one *governmental, legislative or public;* the other, in a sense, *proprietary or private;* Dillon on Municipal Corporations [4 Ed.], sec. 66; *Taylor v. Carondelet*, 22 Mo. 110; *Mayor v. Bailey*, 2 Denio, 433; *People v. Detroit*, 28 Mich. 228.

The principle is a plain one, that the *public powers or trusts* devolved on municipal bodies, to be exercised as *they* should judge best, *cannot be delegated to others.* Dillon on Municipal Corporations [4 Ed.], sec. 96; *St. Louis v. Clemens*, 43 Mo. 395; *Ruggles v. Collier*, 43 Mo. 353; *St. Louis v. Clemens*, 52 Mo. 133. And the violation of such ordinances, whereby an actionable injury is caused, is negligence *per se. Skinner v. Stifel*, 55 Mo. App. 9; *Drain v. Railroad*, 10 Mo. App. 531, 535; *Norton v. Ittner*, 56 Mo. 351, 352; *Schlereth v. Railroad*, 96 Mo. 509; *Keim v. Railroad*, 90 Mo. 314.

These principles demonstrate that the *general* ordinance, *supra*, was passed by the city as a *legislative* act in the legitimate exercise of its *chartered* and *police* powers. Being so authorized, it *conclusively fixes* the *lawful* height of the cross-grade of sidewalks constructed after its enactment, until it shall be changed by a *repealatory* ordinance. It follows therefore that neither respondent, nor any city official directing the work, had power for any reason to nullify or abrogate this ordinance by creating a structure on the public side-

walks in direct contravention of its imperative prohibition. Such action on their part was an assumption of *legislative power*, which the city itself could exercise but not delegate. The effect of respondent's action in disobeying said ordinance was to place an illegal sidewalk in front of appellant's property. That the sidewalk was *negligently* constructed follows as a presumption of law from its being laid upon a greater slant than that permitted by the terms of the ordinance, *supra*, passed to fix the line of demarcation between safe and unsafe sidewalks. That it is more dangerous in fact than one of the *prescribed* slant is the result of physical laws, so well known that the trial judge stopped the cross-examination of respondent tending to establish the plain proposition, that the higher the vertical rise of the sidewalk, the greater the peril of slipping or falling to foot travelers.

Since this reconstruction of sidewalk was done under contract with and by authority of the city of St. Louis, it is *prima facie* liable for personal injuries caused to persons using its illegal portions (cases cited *supra*), and this liability will continue until it exercises its power to abate such illegal portions as a nuisance. Charter, article 6, section 19.

Appellants are not liable for accidents happening thereon, since it was constructed *in invitum* as to them. *St. Louis v. Conn. Mut. Ins. Co.*, 107 Mo. 97. But they *are injured* in the enjoyment of their appurtenant rights, as abutting owners, of ingress and egress to and from their property. It is self evident that a dangerous and illegal slant in the sidewalk fronting their property substantially affects its use and value. When such rights are invaded, abutting owners are entitled under the constitution to damages and injunction. *Gaus & Sons Mfg. Co. v. Railroad*, 113 Mo. 315.

Appellants cannot be charged with costs of that *portion* of the sidewalk, which was constructed contrary to the terms of the general ordinance, *supra*. That ordinance was a valid governmental act within the scope of the powers delegated to the city of St. Louis; it could not be annulled by the contractor, nor any other official, neither could the court sitting as a jury, dispense with its prohibition. The work done by the contractor in violation of its terms was illegal and negligent, and the city of St. Louis, in allowing *so much* of it to remain, permits a continuing nuisance on its streets.

The finding of facts and declarations of law made by the court at the request of the appellants was correct. The modification by the court of the other requests of appellants by adding its proviso, *supra*, was in contravention of the rules of law announced herein and therefore error.

The error of the learned trial judge consisted in mistaking the *source* of the ordinance under consideration. That ordinance was based upon the *express power* confided to the city in its charter (Scheme & Charter, article 3, section 26, sub-section 14; Revised Statutes, 1889, p. 2100, *supra*), under the general welfare clause, "to pass all such ordinances  *  *  *  as may be expedient in maintaining," etc., "good government, *health* and *welfare* of the city."

This provision of the charter is merely a delegation by the state of a portion of its police power to the city, and ordinances validly enacted thereunder are necessarily passed by the city in its *governmental, legislative* or *public character*. Such ordinances differ from state statutes only, in that they are indirect rather than direct expressions of the paramount legislative will.

The distinction between the nature and conse-

quences of the general penal ordinance, *supra*, and the particular ordinances which are passed by the city, upon the recommendation of the Board of Public Improvements, for the improvement of streets, sidewalks, etc., grows out of the differing charter provisions, applicable to each, and the different objects had in view by their enactment. Under its scheme and charter the city of St. Louis contracts for public work through the agency of its Board of Public Improvements, and the instrumentality of ordinances passed upon its recommendation. See scheme and charter, article 6, section 14, *et seq*, and section 27.

In such cases the purpose to be subserved is a *contractual* relationship between two parties, *i. e.* the city and the contractor. To that end the scheme and charter, *supra*, requires that "all ordinances recommended by said board shall specify the *character of the work, its extent, the material to be used*," etc. All of these specifications are inserted in the contracts annually let by said board for the doing of city work. Such ordinances are *virtually contracts* on the part of the municipality, enacted in its proprietary or private character, and the supreme court has applied the *same rules* for construction and liability to them, in suits brought upon special tax bills by contractors, which are applied to contracts made by a private corporation. See *Cole v. Skrainka*, and other cases of suits on tax bills, *supra*.

In the case at bar respondent violated not only his contract, but also the *law* governing the city of St. Louis. This presents an insuperable difficulty, under the decisions of the supreme court, to his recovery for the whole amount of the tax bill.

As to the portion of the sidewalk, laid in obedience to the ordinance, *supra*, there is no reason why the cost apportionable thereto may not be recovered; this was permitted by the supreme court in *Creamer v.*

*Bates, supra,* and the same principle is embodied in that provision of the city charter, securing to the property owner the right to reduce the recovery on a special tax bill by showing that "the work therein mentioned was not done in a good and workmanlike manner." Charter of St. Louis, article 6, section 25.

I hold that the judgment herein should be reversed and the cause remanded to be tried in conformity with this opinion, and that the opinion of the majority of this court herein fails to note the essential distinction between *contract* ordinances, and *legislative or governmental* ordinances. I also deem the opinion of my associates contrary to the decisions of the supreme court cited in this opinion, especially *Sprague v. Rooney*, 104 Mo. 357; *Taylor v. Carondelet*, 22 Mo. 110; *City of St. Louis v. Foster*, 52 Mo. 515; *State ex rel. Reid v. Walbridge, supra; City of St. Louis v. Schoenbush, supra; City v. Howard, supra.*

I accordingly ask that this case be certified and transferred to the supreme court, to be reheard and determined as provided in the constitution.