FARMERS' LOAN & TRUST CO. v. EATON et al.

(Circuit Court of Appeals, Eighth Circuit. March 10, 1902.)

No. 1,512.

1. RECEIVER—AUTHORITY TO LEASE PROPERTY.

A court, having possession of property through its receiver, may authorize him to lease the same.

2. SAME—TERM—RESERVING RIGHT OF CANCELLATION.

Such lease should not be given for a period that will needlessly prolong the litigation, and, if necessary, a provision for cancellation, at the court's option, should be inserted.

3. SAME—OUSTER OF LESSEE BEFORE EXPIRATION OF TERM—RIGHT TO DAMAGES.

Where property is leased by a receiver for a fixed term, with the express sanction of the court, and no right to terminate the lease is reserved, and the lessee is ousted by order of court before the natural termination of the lease, compensation should be awarded him for such actual damage as he has sustained.

4. SAME—ELEMENTS OF DAMAGES—LOSS OF PROPERTY.

Loss of expected profits sustained by a lessee of a railroad lease executed by a receiver, due to the termination of the lease prior to its natural term by order of court, is a proper element of damages to be awarded the lessee.

Appeal from the Circuit Court of the United States for the District of Kansas.

W. H. Rossington, Charles Blood Smith, and Clifford Histed, for appellant.

J. D. McFarland and George H. Whitcomb, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. The questions to be determined in this case arise on the following facts: In a certain action which was brought by the Farmers' Loan & Trust Company, as trustee, to foreclose a mortgage on the property of the St. Louis, Kansas & Southwestern Railroad Company, the circuit court of the United States for the district of Kansas, on November 27, 1896, appointed Dwight Braman as receiver of the mortgaged property. On January 27, 1897, the receiver aforesaid presented a petition to the court, requesting leave to lease the property of said railroad company to Francis S. Eaton, one of the appellees, for the period of one year from January 30, 1897, until January 30, 1898. Such leave was granted, and the proposed lease was submitted to the court and approved. On June 30, 1897, the receiver filed another application for authority to enter into another lease with said Eaton for a term of one year from July 1, 1897, with an option to said lessee to continue such lease in force for a second year. The proposed lease was authorized and approved by an order made and entered of record on June 30, 1897, and was duly executed. By the terms of the latter lease Eaton, the lessee, was to pay a deficit, in the sum of $2,780, which had accrued from the operation of the railroad from March 17, to July 1, 1897. The lessee also agreed to assume and pay certain notes, which had been given for equipment, amounting to $2,400, and were payable at the rate of $200 per month. He also agreed to pay the interest which accrued during the term of the lease on certain receiver's certificates, to the amount of $12,000, to insure the buildings along the road, to put in at least 2,000 new ties, and to place the road generally in a safe condition. The receiver, on his part, was to pay all the taxes upon the property, but the lessee was to receive all the income and earnings of the property, together with all cash then in the hands of the lessee as manager, and also all accounts and bills receivable, which accrued or were received from the operation of the road while the same had been under the charge of the lessee. On September 23, 1897, the court entered a decree of foreclosure and sale, by virtue of which the mortgaged property was sold and the sale confirmed on December 20, 1898, at which time the purchaser at the foreclosure sale was placed in possession of the mortgaged property. In the meantime, on November 30, 1898, Eaton, who had been or was about to be dispossessed of the leasehold property, filed a petition, asking, by way of relief, that he might continue to operate the road which he had leased until the 1st day of July, 1899, in accordance with the option which he had reserved by the terms of the lease. This petition on the part of Eaton was subsequently referred to a master, to report what, if any, compensation should be

allowed to him as lessee, on account of the wrongful termination of his lease. After a full hearing and report, and after exceptions to said report had been heard and considered, the lower court allowed the lessee, as damages for the cancellation of his lease before the termination thereof, the sum of $8,298.88, which was a sum somewhat in excess of the amount recommended by the master. The present appeal was taken by the Farmers' Loan & Trust Company, the complainant in the foreclosure proceedings, from such order or allowance.

The principal question which this court is called upon by the appellant to determine is whether Eaton, the lessee, is entitled to any damages on account of being dispossessed of the leasehold property, prior to the natural termination of his lease. It is conceded, apparently, that a court, having possession of property through its receiver, may authorize him to lease the same; but, if such proposition is not fully conceded, it is, at least, well sustained by the authorities. In the case of Mercantile Trust Co. v. Missouri, K. & T. Ry. Co. (C. C.) 41 Fed. 8, 11, it was held by Judge Brewer that receivers, acting under the direction of the court which appointed them, have power to execute leases without the consent of the mortgage bondholders. And in the case of Vault Co. v. McNulta, 153 U. S. 554, 560, 14 Sup. Ct. 915, 38 L. Ed. 819, it was taken for granted that such power exists. See, also, Weeks v. Weeks, 106 N. Y. 626, 13 N. E. 96; Beach, Rec. §§ 288, 289. The point relied upon by the appellant seems to be that when such leases are made, even with the approval of the court, the court has the right to terminate them whenever the necessities of the litigation so require, and that, if terminated, the lessee is not entitled to compensation for any damages which he may have sustained. We are at a loss, however, to discover any good reason by which such a doctrine can be upheld. A private person has the right to break his contract only on condition that he pays the damages incident to the breach. In some cases the right of an individual to break his contract on condition that he makes compensation in damages is not conceded, but courts of equity will compel specific performance. And no reason occurs to us why a judicial tribunal which has power to authorize a receiver to enter into a contract should be exempt from the rule which obtains as between individuals. If anything, it would seem that courts ought to be more scrupulous in keeping their engagements, and more ready than private individuals to award damages, when, in the exercise of their powers, they find it necessary to violate agreements which they have unwittingly made through their receivers. A judicial tribunal, as was said in one case (Farmers' Loan & Trust Co. v. Burlington & S. W. R. Co. [C. C.] 32 Fed. 805), "should be chary of promises, eager of performance." It was also held in a New Jersey case (Vanderbilt v. Railroad Co., 43 N. J. Eq. 669, 12 Atl. 188) that the contracts of a receiver, made with either express or implied authority, cannot be annulled or revoked at the mere pleasure of the court, except on the same conditions that an individual may break his engagements. When a court authorizes its receiver to lease, for

the time being, property in his custody, it should act with great circumspection, and see to it that the lease is not given for such a period of time as will needlessly prolong the litigation or endanger the rights of any parties thereto. If need be, clauses should be inserted in such leases reserving to the court the power to cancel them whenever it is deemed expedient to do so. But when, as in the present case, property is leased for a fixed term, with the express sanction and approval of the court, and no right to terminate the lease is reserved, and the lessee is ousted by order of the court before the natural termination of the lease, compensation should be awarded to the lessee for such actual damages as he has sustained. If this is not done, it might well be said that the court, in its own dealings, does not observe the same good faith which it compels others to observe. We are of opinion, therefore, that the lower court very properly awarded the lessee damages for the wrongful ouster, and the only question which remains for consideration is whether the damages so awarded were excessive.

Counsel for appellant concede that the basis adopted by the lower court for estimating the lessee's damages was as fair as could have been adopted, but they contend broadly that the lessee was not entitled to any allowance for what he might have made by the operation of the road if he had been allowed to operate it during the residue of his term. They characterize such damages as speculative, and not recoverable. We do not concur in that view. For the breach of such a contract as the one in question we do not perceive what damages could have been more direct and certain than the loss of the profit of operation. The lessee doubtless entered into the lease for the purpose of realizing something from the operation of the road over and above the expenses of running it and the rental. This expected profit was within the contemplation of the parties, and the ouster of the lessee necessarily deprived him of the expected gain. The most that can be said is that the amount of the profit which the lessee would have realized could not be computed with mathematical accuracy. The loss of this profit, however, was the natural and probable result of the ouster, and the fact that the amount of the profit was not susceptible of mathematical demonstration, since the lessee had not been allowed to operate the road, did not render it so uncertain that it should have been excluded, within the rule announced by this court in Trust Co. v. Clark, 34 C. C. A. 354, 92 Fed. 293. As the profit which the lessee would have realized was estimated by the master after the termination of the leasehold term, and at a period when all of the conditions which affected the earnings of the road during the period covered by the lease were fully known, we have no doubt that the probable earnings, and the probable cost of operation, during that period, were so well known that the master was able to estimate the same, at the time he did, with reasonable accuracy. We conclude that the damages allowed below were recoverable, within the doctrine announced by this court in the case above cited, and also by the doctrine enunciated in the following cases: Railroad Co. v. Howard, 13 How. 307, 344, 14 L. Ed. 157; Howard v. Manufacturing Co., 139 U. S. 199, 206, 11 Sup. Ct. 500, 35 L. Ed. 147, and cases there cited.

114 F.—2

We have not overlooked the fact that counsel for the appellees have filed and argued a motion to dismiss this appeal upon the ground that the clerk of the lower court has merely certified that certain documents contained in the transcript, such as the bill of complaint, order appointing a receiver, etc., are full and complete copies thereof as they appear of record in his office, without certifying that the transcript is a complete one. Counsel for the appellees cite, in support of their motion to dismiss, the case of Meyer v. Implement Co., 29 C. C. A. 465, 85 Fed. 874, which seems to support their contention. We have deemed it best, however, to dispose of the case on its merits, without expressing a definite opinion with respect to the point thus raised. In making up transcripts in equity cases, it is doubtless found to be expedient, at times, to omit copies of certain proceedings, which really form a part of the record, because the omitted proceedings have no bearing upon the question intended to be presented on appeal, and merely cumber the record. To avoid such objections to the transcript as have been made in the present case, it would doubtless be well for the clerk, when the transcript is not a full and complete transcript of all the proceedings in the case, to make some appropriate mention of the fact in his certificate, stating the reasons why a portion of the proceedings are omitted, and that the transcript, as prepared, is a full and complete transcript of such proceedings in the case as it purports to contain.

The decree below is affirmed.