GAY et al. v. HUDSON RIVER ELECTRIC POWER CO. et al. (two cases).

(Circuit Court, N. D. New York. November 26, 1909.)

1. RECEIVERS (§ 110*)—MANAGEMENT OF PROPERTY—POWER OF COURT TO AUTHORIZE CONTRACTS BY RECEIVERS.

A court, which has appointed receivers for a corporation and has directed them to continue its business to keep it a going concern, has power to authorize them to enter into such contracts as are usual and customary in such business, even though they may extend beyond the probable term of the receivership.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 110.*]

2. RECEIVERS (§ 110*) — CONTINUANCE OF BUSINESS — CONTRACTS FOR FUTURE PERFORMANCE.

Receivers were appointed in a creditors' suit for eight associated corporations, whose business had been conducted under a single management and was so continued by the receivers by direction of the court. Such business was principally the generation and production of electrical power and gas and its transmission and sale to both public and private consumers, and the business of the several companies was more or less interdependent. Each corporation had both secured and unsecured creditors, and on the filing of ancillary bills in foreclosure by the mortgage trustees the receiverships were extended to them, and as a whole the business under the management of the receivers was profitable and enhanced the market value of the properties. Held, that it was not only within the power of the court to authorize the receivers to make a contract to supply electrical power to a customer for a five-year term, but that court, in its discretion, should exercise such power where necessary to retain such customer, and where the contract was a valuable one for the company and to the advantage of its creditors as a whole.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 110.*]

In Equity. Suits by Eben H. Gay and another against Hudson River Electric Power Company. On motion by the New York Trust Company, as trustee of certain mortgage bonds, to vacate an order of this court, made October 22, 1909, authorizing the receivers herein of the defendant Empire State Power Company to enter into a contract with A. V. Morris & Son, of Amsterdam, N. Y., for furnishing said firm with electrical power for a period of five years from July 1, 1909. Denied.

See, also, 166 Fed. 771.

---

Hornblower, Miller & Potter (Morgan M. Mann, of counsel), for New York Trust Co.

. Noble, Jackson & Hubbard, for bondholders of said company.

Abram J. Rose and George B. Curtiss, for receivers.

RAY, District Judge. The order was accompanied with a copy of the proposed contract, and, while made ex parte, contained a provision for service thereof on all interested parties, and that it was to become effective and be carried out unless an appeal should be taken or a motion made to vacate, modify, or change same. In effect it was an order to show cause. This motion is made accordingly.

This is a creditors' suit, seeking to wind up the affairs of the eight defendant corporations on allegations of insolvency, waste, mismanagement, etc., and asking the appointment of receivers to conduct and manage the affairs of the corporations and continue the business. George W. Dunn, Milton Delano, and Charles W. Andrews were appointed receivers accordingly, and since about November 1, 1908, have been managing the affairs and continuing the business of these corporations as officers of this court. By ancillary bills in foreclosure the receiverships have been extended to the foreclosures, with the additional powers incidental thereto. One of the main allegations of the bill is that these eight corporations, including the Empire State Power Company, were, and for a long time had been, engaged in the generation and production of electrical power and gas and the transportation, sale, and supply of same to the public and to private persons, and were quasi public service corporations, and had been and were being managed and run, and should continue to be run and managed, as one corporation. These corporations had no other business, except that, incidentally, two or three had a supply store in addition to their generating plants, where they kept gas and electrical supplies, mainly for the convenience of themselves and of their customers, and which were so conducted as to supply and serve the convenience of all the eight corporations and their customers.

The order appointing the receivers provides that they shall continue the business, operating the several corporations and exercising their corporate rights and franchises as one whole. It then was, and now more than ever is, evident that these corporations must be run and the business conducted as one whole. Contracts had been made, electric power generating and gas plants arranged, and transmission and pipe lines arranged and constructed, with this in view. As a whole these corporations generate more electrical power and make more gas, and have facilities for so doing, than is required in any one place at all times or seasons of the year. When water is low, greater pressure is placed on the gas plants or steam electrical plants, etc. Certain proposed and purchased water rights had not been fully developed when the receivers were appointed, and certain transmission lines had not been constructed or completed as proposed, in order to equalize matters and make all these properties available to their full capacity, etc. It is evident that one plant was to an extent dependent on another or on others. It is also evident from the very nature of things, and fully appears from the record, that contracts for the supply of gas, or

electrical power, or of both gas and electrical power, should be renewed from time to time on proper terms, and new or additional contracts made, if the plants are capable of doing the work, or will be with small outlay, and thereby surplus power now going to waste utilized and saved, with profit to the companies or corporations concerned.

The court is not only to protect and preserve the physical properties as such, but the business, and keep them running as a "going concern" or business, or as "going concerns or businesses." In a field where competition exists, as it does here, it is evident that power to authorize the making and extension and renewal of contracts for the making and supply of gas and the generation and supply of electrical power or energy must reside in this court, or it has no power to continue and protect the business of these corporations, or of any one of them. Let go the business, let it pass to competitors, and the value of these properties of these corporations is substantially destroyed—largely depreciated, in any event. It is also a self-evident proposition that the court cannot continue this business on any "hand to mouth" basis. Business of this kind is not done, and cannot be done, in that way. It is a business, generally speaking, of producing, transporting, and selling—here the production, transportation, and delivery and sale of electrical power and gas. The business of the one company cannot be dropped, even if not immediately of much profit, without injury to that company and to all the others. Again, this particular corporation, and each of the corporations has many general creditors, as well as secured creditors (bondholders), and it is the province and duty of the court to protect and preserve the rights and interests of all, those of both classes. Here there is an equity for the general creditors, as fully and plainly appears. Hence this court is not to consult the wishes of the bondholders alone. A court of equity would act unjustly, unwisely, and show favoritism, should it do so. Still the court has no right to sacrifice the interests of either class, or to subordinate the rights of one to those of the other.

In contracting for the supply of either electrical power or gas, or of both, time contracts must be made. Takers and users, in the nature of things, must know with some definiteness when their supply is to end. Such a contract as this is one within the general scope and nature of the business being carried on by the corporations and continued by the receivers, and which they have been authorized to carry on and continue, and is within their general powers necessarily: Northern Pac. R. Co. v. American Tr. Co., 195 U. S. 439, 461, 462, 25 Sup. Ct. 84, 49 L. Ed. 269. It is not an extraordinary or unusual contract for corporations engaged in such business. A. V. Morris & Son are, and when the order was made were, taking power from this corporation in its own field of operations. A. V. Morris & Son are enlarging their plant and extending their business. They are engaged in running knitting mills, and there are electric plants in that vicinity competing with these receivers. Shall this business now held by the receivers be dropped, and its extension abandoned? The evidence before the court is overwhelming that the contract is a desirable and a profitable one. Under the businesslike management of Mr. Dunn, Mr. Delano, and Mr. Andrews, and under adverse circumstances, the general business

has grown, and, as a whole, is being conducted at a profit; due allowance being made for wear and tear and repairs. Confidence in the value of these properties and of the business, once shaken, is being restored, has been restored largely, and, barring a general financial depression, the ultimate value of the properties and success of the business are assured.

As I am satisfied and find (1) that the proposed contract is fair, and a desirable and valuable one for the company, (2) that it cannot under ordinary conditions prove detrimental to the interests of either secured creditors (bondholders) or unsecured creditors, and (3) is not unusual or extraordinary or improvident, but within the power of this court to authorize, and of the receivers by authority of this court to make, it becomes a matter of discretion whether the order made shall be vacated or modified. Farmers' Loan & Trust Company v. Eaton, 114 Fed. 14, 16, 51 C. C. A. 640; Mercantile Trust Co. v. Missouri, etc. (C. C.) 41 Fed. 8, 11; Northern Pac. Ry. Co. v. American Tr. Co., 195 U. S. 439, 461, 462, 25 Sup. Ct. 84, 49 L. Ed. 269; Chicago Deposit Vault Co. v. McNulta, 153 U. S. 554, 562, 563, 14 Sup. Ct. 915, 38 L. Ed. 819. In Northern Pac. R. Co. v. American Tr. Co., supra, the court, per Mr. Justice Peckham, plainly points out that the court may authorize, is presumed to authorize, where it directs a business to be continued, the making of such contracts as are usual and customary in conducting the business. The duration of a receivership is uncertain, and in such a business as this to hold that a court is without power to authorize contracts which will probably extend beyond the term of the receivership would be to so cripple such a business as to virtually destroy it. Clearly the business cannot be continued if the power is denied. I find no suggestion in the decision of the Supreme Court of the United States that the powers of the court are so limited. On the other hand, the contrary is plainly indicated. In the case of leasing real estate, leases may be for a definite term, provided they be the customary commercial or businesslike leases. They are not limited in time to the duration of the receivership. This is necessarily so, if the property is to be rented at all. Who would rent real estate for any purpose, if his lease was to terminate with the life of the receivership? So here, who will contract for his light or electric power for an indefinite period, terminating with a legal proceeding uncertain in its duration from the very nature of things?

These receivers have done the best they could, and made the best terms, including time, possible. It is a question of accepting and authorizing this contract, or letting the desirable business of A. V. Morris & Son go to a competitor. If this court refuses to approve and authorize the usual contracts in such a business, this business will pass entirely from these companies to its competitors, who then will probably absorb these properties on a sale thereof. If this court refuses to authorize contracts which are to extend, probably, beyond the termination of the receiverships, and only such as are to terminate with it, or those contracts which may be ended with the receivership by order of the court, without the consent of the party taking the gas or electrical power, the business of these corporations may as well stop. Business conditions and demands must be recognized, and courts are power-

less to fully regulate them. Courts cannot compel business houses and corporations to make such contracts as they may think most advantageous to those under their immediate care and supervision, but must accept such as they can get, if they accept any. When a proposed contract is shown to be desirable and profitable to the interests a court has in charge, it is its duty to authorize it, if within its power so to do.

The motion to vacate the order is denied.