CITY OF IRONTON, OHIO, v. HARRISON CONST. CO.

(Circuit Court of Appeals, Sixth Circuit.   April 7, 1914.)

No. 2419.

1. ABATEMENT AND REVIVAL (§ 12*)—OTHER ACTION PENDING—DIFFERENT JURISDICTIONS.

Where a city sued plaintiff construction company for breach of contract in a state court, but the action had not passed to final judgment before the construction company sued the city in the federal court for the city's alleged breach of the same contract, the pendency of the state court action was not ground for abatement of the federal suit.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 87–91, 94, 95, 98;  Dec. Dig. § 12.*

Pendency of action in state or federal court as ground for abatement of action in the other, see notes to Bunker Hill & Sullivan Mining & Contracting Co. v. Shoshone Mining Co., 47 C. C. A. 205;  Barnsdall v. Waltemeyer, 73 C. C. A. 521.]

2. ACTION (§ 69*)—PENDENCY OF OTHER ACTION—STAY OF PROCEEDINGS—DISCRETION OF COURT.

Where a suit had been instituted in a state court between the same parties prior to the institution of another suit in the federal court, a request that the latter suit be stayed until the termination of the suit in the state court was at most an appeal to the discretion of the federal court.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 744–751;  Dec. Dig. § 69.*]

3. MUNICIPAL CORPORATIONS (§ 1034*)—ACTION—DEFENSES—PLEADING.

In an action for breach of a city's contract for construction of a waterworks system, a defense that the city was forbidden to install the works until the State Board of Health had approved the plan, and for lack of such approval the contract was invalid, could not (in Ohio) be taken advantage of unless pleaded.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2203–2205;  Dec. Dig. § 1034.*]

4. MUNICIPAL CORPORATIONS (§ 352*)—CONSTRUCTION OF CONTRACT—PERSONALITY OF ENGINEER.

Where a city's contract for the construction of waterworks gave to the city engineer in charge of the works broad powers, authorizing him to supervise the work of construction generally, to order additional work, fix the price therefor, and determine controversies, etc., a provision that the word "engineer," as used in the contract and specifications, referred to P., chief engineer, in charge of the work, or in case of his death or disability, such other person as might be appointed by the city or the engineer entitled the contractor to the services of P. as engineer in charge of the work, except in case of his death or disability.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 883;  Dec. Dig. § 352.*]

5. ESTOPPEL (§ 78*)—CONTRACTS—DEFENSES.

Where a city had unquestioned power to employ a certain person as engineer to supervise the construction of a waterworks improvement, and provided in a contract with plaintiff that such person had been employed and should have charge of the work, except in case of his death or disability, when another might be appointed, the city would be thereafter estopped to plead that such person had never been employed to supervise the work.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 204–210;  Dec. Dig. § 78.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

212 F.—23

6. ESTOPPEL (§ 78*)—CONTRACTS—TRUTH OF RECITALS.
    Where a municipal corporation has power to contract and do preliminary acts on which the contract rests, and which are recited in the contract as having been done, it is estopped to deny the truth of the recitals.
    [Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 204–210; Dec. Dig. § 78.*]

7. ESTOPPEL (§ 107*)—CAUSE OF ACTION—PLEADING.
    Where plaintiff's pleading fully stated the facts on which an estoppel was predicated, plaintiff was entitled to the benefit thereof, though the claim of estoppel was not alleged in terms.
    [Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 297; Dec. Dig. § 107.*]

8. DAMAGES (§ 124*)—BREACH OF CONTRACT—LOSS OF PROFITS.
    In an action for breach of a city's contract for plaintiff's construction of a waterworks system, plaintiff's right to recover lost profits was not affected by the fact that if, during the time fixed for performance, there had been high water in a river, the profits would have been greatly lessened, it appearing that, at the time suit was brought, the contract period had passed and the physical conditions had become matters of history.
    [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 326–338; Dec. Dig. § 124.*]

9. APPEAL AND ERROR (§ 1078*)—WAIVER OF ERROR—FAILURE TO ARGUE.
    Errors not argued in the brief of plaintiff in error will be regarded as waived.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4256–4261; Dec. Dig. § 1078.*]

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Action by the Harrison Construction Company against the City of Ironton, Ohio. Judgment for plaintiff, and defendant brings error. Affirmed.

In March, 1907, the city of Ironton and the Harrison Construction Company entered into a written contract by which the latter agreed to construct for the former a waterworks plant consisting of a battery of wells and a pipe line, all for a stated price. The contract provided that the work should be done under the supervision of the engineer, and left very broad discretionary powers to the engineer. Section 10 reads thus:

"Whenever the word 'engineer' is used in this contract and specifications, it refers to Alexander Potter, chief engineer in charge of the work, or in the case of the death or disability of the said Alexander Potter, such other person as may be appointed by the city or the engineer, as the case may be."

Before work under the contract was begun, the city appointed Mr. Oliver as engineer. He directed the Construction Company to proceed with the work; it refused so to do because it was entitled to the supervision .of Mr. Potter, who was neither dead nor disabled; the city declared the contract forfeited, and relet the work at a higher price, and in October, 1907, brought suit in a common·pleas court of Ohio against the company to recover the excess price which the city had been compelled to pay on the reletting. The company denied that it had broken the contract, but did not set up by way of counterclaim or offset its own claim for damages. This suit resulted in judgment for the city, rendered May 10, 1910, but this judgment never became final; the appellate courts eventually reversed and remanded for a new trial. In June, 1909, the company brought this action in the District (then Circuit) Court against the city. Its amended petition set up the making of the contract and its breach by the city's refusal to permit the company to proceed under Mr. Potter's direction and insistence that it proceed under the plans of the new engineer. The petition claimed damages for the com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pany's lost expenses and values attending its furnishing of apparatus and materials in preparation for the contract, and for the loss of the profits which it would have made by performance. The amended answer set up, for a first defense, the proceedings in the state court, and claimed that, by reason thereof, the District Court was without jurisdiction, and the action should abate, or, at least, that the action should be stayed until the final disposition of the case in the state court. For a second defense, it "denies that Alexander Potter was employed as engineer on behalf of said city of Ironton to supervise and construct said waterworks and improvements; denies that said city wrongfully or otherwise refused to allow said Potter to act as engineer in the construction of said waterworks improvement, but on the contrary avers that said Potter never was at any time employed for the purpose of supervising or constructing said waterworks improvement." By cross-petition, the city then set up practically the same claim made in its suit in the state court, and asked damages accordingly.

Upon these issues, the case came on for trial, and resulted in a verdict and judgment for the construction company. The city brings this writ of error.

A. J. Layne, City Solicitor, of Ironton, Ohio (A. R. Johnson, of Ironton, Ohio, of counsel), for plaintiff in error.

Paxton, Warrington & Seasongood, of Cincinnati, Ohio, and Lum, Tamblyn & Colyer, of Newark, N. J. (Murray Seasongood, of Cincinnati, Ohio, of counsel), for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and COCHRAN, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1, 2] 1. The city complains that this suit was not abated, or, at least, stayed, because of the prior suit in the state court. Of this claim it is sufficient to say that there had been no final judgment in the state court; that the plea was therefore, in effect, not one of prior adjudication, but one of prior suit pending, and that a prior suit pending in a state court will not abate a later suit in a federal court, even if between the same parties upon the same issue, and even if the two courts are in the same district of the same state. City v. Clark (C. C. A. 6) 62 Fed. 694, 10 C. C. A. 591; Bank v. Stone (C. C.) 88 Fed. 383, 398. The request that this suit be stayed until the termination of the other case was, at most, an appeal to the discretion of the trial court, and the inability of the company to recover its damages under the existing issues in the state court would properly influence that discretion; but it is not easy to see why the company did not have an absolute right that its case in the federal court should proceed to judgment. McClellan v. Carland, 217 U. S. 268, 282, 30 Sup. Ct. 501, 54 L. Ed. 762.

[3] 2. It is urged that the laws of Ohio forbid a city to install waterworks until the State Board of Health has approved the plan, and that, for lack of this approval, the contract was invalid. It is by no means clear that the State Board of Health did not give to this plan all the approval which the statutes contemplate; however that may be, the rules of pleading in Ohio clearly require that if a matter of this nature is to be urged in defense, it should be pleaded, and neither the answer nor the amended answer presents any such issue. It was therefore properly disregarded.

[4] 3. This brings us to the real question in the case,—which party broke the contract? The provisions for engineering supervision do not amount to that delegation of power which is forbidden to a municipal corporation; they are fairly incidental to the making of such a contract; but they are very broad; they make it clear that the personality of the engineer was a material element in inducing the contract, and sharply distinguish this case from those where the engineer had only to see that the specifications were satisfied. City of Brooklyn v. Brooklyn Ry. Co., 47 N. Y. 475, 7 Am. Rep. 469; Burke v. Kansas City, 34 Mo. App. 570. Under this contract, the engineer had broad power to construe every provision, and final power to arbitrate all the technical disputes that might arise (see Memphis Co. v. Brown [C. C. A. 6] 166 Fed. 398, 403, 93 C. C. A. 162); he could direct work to be omitted, or added, and could fix the price of each; he could determine how fast the work should be pushed, and how many men should be employed; he could make "changes in the line, grade, form, plan, position, dimensions or material." It is not too much to say that under this contract, the manner in which the engineer exercised his powers would determine whether there would be profit or loss, and it is clear to us that the contractor was entitled to have the supervision of that engineer who was named, or of his successor, appointed in the manner agreed.

If, after the making of the contract, the city had discharged Mr. Potter and appointed Mr. Oliver, troublesome questions would arise. The rightfulness of Mr. Potter's discharge might have to be litigated, as best it could, in a suit to which he was not a party, and whether such discharge was a "disability," and who would then have the power to appoint a successor, would have to be determined. The present case does not present these embarrassments. The city, by its pleading, deliberately, and doubtless for what seemed to it good reasons, adopted the position that Mr. Potter never had been employed and was not employed at the date of the contract. It never has relied upon the position that he was rightfully discharged, and that his successor was appointed pursuant to the contract. It never has tendered that issue. It "avers that said Potter never was at any time employed for the purpose of supervising or constructing said waterworks improvement"; therefore, we have only this defense to consider.

[5, 6] The city cannot be heard to make this defense. Section 10 of the contract is, in effect, a recital and representation that Mr. Potter has been employed. The city had unquestioned power to employ him. It is to be presumed that the company entered into the contract in reliance upon this representation; and for the city now to deny its truth is an act of bad faith which cannot be permitted. Where a municipal corporation has power to make a contract, and has power to do the preliminary acts upon which the contract rests, and which are recited in the contract, it is estopped to deny the truth of the recitals; and that a sufficiently thorough examination of the corporate records would have shown the recital to be inaccurate is no defense. This court has frequently so held. Cadillac v. Woonsocket, 58 Fed. 935, 940, 7 C. C. A. 574; Defiance v. Schmidt, 123 Fed. 1, and cases cited on

page 7, 59 C. C. A. 159; Bradford v. Cameron, 145 Fed. 21, 23, 76 C. C. A. 21.

[7] 4. It is urged that this is giving the company the benefit of an estoppel against the city, though an estoppel is not pleaded, and that this benefit cannot otherwise be claimed. The company's pleading here does fully state the facts out of which the estoppel arises, and that is enough; to claim the estoppel in so many words is merely to state a conclusion of law. This is not required.

[8] 5. It is insisted that the company was not entitled to recover lost profits, and that the charge was erroneous on this subject. Further and more specific instructions on this subject might well have been given, and doubtless would have been given upon request; but the city made no request or exception, except to raise the point that no lost profits could be awarded. We find no sufficient reason for this position. True, the profits were unusually contingent in their character. If there had been high water in the river during all the period provided for the work, performance would have been impossible; abnormally high water or storms would have increased the expense and lessened the profits; but difficulties of this class are attendant on most construction work, and they do not make the profits so speculative as to be no proper basis for damages. When the suit was brought, the contract period had passed, and the physical conditions had become matters of history instead of conjecture. The recovery permitted was not beyond the rule. Philadelphia Co. v. Howard, 54 U. S. (13 How.) 307, 344, 345, 14 L. Ed. 157; U. S. v. Behan, 110 U. S. 338, 346, 4 Sup. Ct. 81, 28 L. Ed. 168; Anvil Co. v. Humble, 153 U. S. 540, 549, 14 Sup. Ct. 876, 38 L. Ed. 814; Farmers' Co. v. Eaton (C. C. A. 8) 114 Fed. 14, 17, 51 C. C. A. 640.

[9] 6. Errors are assigned on the admission and rejection of evidence. We find no prejudicial error. The most plausible objections urged upon the oral argument were not mentioned in the city's brief; and it is not clear enough that in view of the whole record there was any error, or, if there was, that it materially affects the result, to justify us in disregarding our practice to consider as waived errors not argued in the brief, which by our rule 20 is required to specify the questions involved. Ireton v. Pennsylvania Co. (C. C. A. 6) 185 Fed. 84, 86, 107 C. C. A. 304.

The judgment is affirmed, with costs.