**MILLER et al. v. UNION GAS & OIL CO. et al.  SPARKS et al. v. UNION GAS & OIL CO.  SKAGGS et al. v. SAME.**

(Circuit Court of Appeals, Sixth Circuit.  January 8, 1924.)

Nos. 3785, 3784, 3789.

1. **Mines and minerals ⟨⟩58—"Unless" oil lease held not void, as unilateral.**

An oil and gas lease, which contained no express covenant to develop the land, but provided that, in case no well should be commenced within 12 months, the lease should be null and void, "unless" the lessee should pay a specified rental during the time of further delay, and which further provided for payment of royalty, and recited a consideration of $1 received, *held* not void as unilateral.

2. **Mines and minerals ⟨⟩78(2)—Failure to pay in advance rental for delayed development held not to work forfeiture of lease under facts of this case.**

Where an oil and gas lease did not in terms require payment in advance each year of rental for delayed development, and especially where payments later were accepted without objection, payment at any time during the year for which it is payable is in time to avoid forfeiture.

3. **Mines and minerals ⟨⟩78(7)—Lessor in oil lease can enforce forfeiture only on showing that conditions have not been reasonably complied with.**

Where an oil and gas lease fixes no time within which development shall be commenced, there is an implied covenant that it shall be within a reasonable time, and to entitle the lessor to forfeiture for failure of lessee to begin work after notice to do so the burden rests on him to show that the notice was reasonable, and that it was not reasonably complied with.

4. **Mines and minerals ⟨⟩78(1)—Compliance by lessee in lease with notice to begin development work held reasonable.** ·

Where the lessor in an oil and gas lease notified lessee that he would accept no more rental for delay in development work, and to begin such work by a date two months and seven days from that time, the bringing of material on the ground before that date and the completion of two wells within six weeks thereafter *held* to support a finding of reasonable compliance with the notice.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Mines and minerals ☞78(5)—Effect of acceptance of rental for deferred development held not necessarily to rest on technical estoppel, but on practical construction of lease by parties.**

Where an oil and gas lease did not provide that payment of rental for deferred development work should be made in advance each year, the effect of acceptance of rental later in the year does not necessarily rest on a technical estoppel, but rather on a practical construction of the lease by the parties.

**6. Pleading ☞36(2)—Facts pleaded by either party may be given proper effect.**

A complainant cannot complain that facts alleged in his bill are given their proper effect, on the ground that they were not pleaded by defendant.

Appeals from the District Court of the United States for the Eastern District of Kentucky; Andrew M. Cochran, Judge.

Suits in equity by Roscoe C. Miller and others against the Union Gas & Oil Company and A. C. Albin, and by Morton E. Sparks and others and by Oscar Skaggs and Cora Skaggs, respectively, against the Union Oil & Gas Company. Decrees for defendants, and complainants appeal. Affirmed.

S. S. Willis, of Ashland, Ky., for appellants.

Homer E. Holt and John H. Holt, both of Huntington, W. Va. (Holt, Duncan & Holt, of Huntington, W. Va., on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. These cases were heard together in this court. Each is an appeal from a decree of the District Court dismissing a bill by the lessors in an oil and gas lease (or those standing in the lessor's rights) to cancel the lease for failure to perform the covenant to develop.

In No. 3785, the lease was given January 26, 1916, by appellant Sagrave to defendant Albin (who assigned his interest to the other appellee), the lessors subsequently conveying the leased land (subject to a reserved interest) to appellants Miller, who conveyed to appellant Adkins an undivided one-half interest in the oil and gas. The lease was for "ten years or as long as gas or oil is found in paying quantities" —the lessors to receive one-eighth of all the oil "produced and saved," and $100 per year for each well for gas if "found in sufficient quantities to transport." The lease contained no express covenant to develop the land, but did provide that in case no well should "be commenced within twelve months from this date" the lease should be null and void, unless the lessees should thereafter pay at the rate of 10 cents per acre per year for each year drilling should be delayed; also that "in case no paying well is drilled on said premises within two years from date this grant shall be null and void." The first year's rental was paid January 15, 1918; the second, January 15, 1919. Both payments were accepted. On November 19, 1919 (development not having been begun), appellants notified appellees to proceed to develop the property before January 26, 1920, upon default whereof the lease would thereupon become canceled and void—appellants announcing that they would receive no more rental.

Appellees brought some material on the ground before January 26, 1920, but began no drilling until February 2d following. A well was completed upon March 10th then next. A second well was completed April 27, 1920, about two weeks before this suit was begun, at which time two producing wells were in operation. At the time of the hearing four wells producing oil in paying quantities were completed, and a fifth was being drilled. The District Court, denying appellants' contention that the lease constituted a mere option to develop and so was void for want of mutuality, held that, whether or not the rental was payable in advance, appellants were bound by the practical construction put upon it (through acceptance of the two annual rentals) as not requiring payment until the end of the year; that the lease was therefore not terminated when appellees entered upon the land for the purpose of drilling; and that the latter complied as soon as reasonably possible with the notice to develop, and had prosecuted the same throughout with due diligence, and so were not in default in that regard.

[1] We cannot assent to the proposition that the lease in question was unilateral and void from the beginning. The argument in this respect is that it is an "unless" lease, without covenants or consideration. While there was no express covenant to pay rent in default of development, there was an agreement to pay a stipulated royalty on the oil produced and an annual rental for each commercial gas well, and these agreements, together with the expressed consideration of $1, whose receipt was in terms acknowledged, stated a complete consideration, not only for the grant of the ten-year term, but for the privilege of extending the time for developing by paying the stipulated rental therefor. Allegheny Oil Co. v. Snyder (C. C. A. 6) 106 Fed. 764, 766, et seq., 45 C. C. A. 604; Lindlay v. Raydure (D. C.) 239 Fed. 928, 932, et seq., affirmed in Raydure v. Lindley (C. C. A. 6) 249 Fed. 675, 161 C. C. A. 585.

Had this been an "or" lease, rather than an "unless" lease, presumably the proposition we have stated would not now be challenged. Hopkins v. Zeigler (C. C. A. 6) 259 Fed. 43, 46, 170 C. C. A. 43. But the fact that it is an "unless" lease is not enough to change the situation otherwise existing, as shown by the Allegheny Oil Co. Case, supra, where the lease involved was an "unless" lease, and by Hopkins v. Zeigler, supra, 43, 47, et seq., where an "unless" provision was construed. See, also, Leeper v. Neely, 293 Fed. 967, decided by this court November 6, 1923. We find nothing to the contrary in the recent Kentucky decisions of Union Gas & Oil Co. v. Ind.-Tex. Petr. Co., 199 Ky. 384, 251 S. W. 1008, and Brooks v. Day Oil Co., 200 Ky. 323, 254 S. W. 912, nor anything in any other Kentucky cases cited, which compels such contrary conclusion. In the instant case, so far as concerns the provision for abandonment, not only had the lessee entered and begun development before suit was brought, but the lease in terms called for the payment of $1 upon abandonment by the lessee.

[2] Nor are we impressed by the contention that the lease expired by its own terms at the end of the year for lack of payment of rental in advance. It has been held by the Court of Appeals of Kentucky that,

where (as here) the lease does not in terms require payment in advance, tender of the stipulated rental before the expiration of the year for which it is payable is in time to avoid forfeiture. Warren v. Gilliam, 182 Ky. 807, 207 S. W. 698; McNutt v. Whitney, 192 Ky. 132, 232 S. W. 386. But, if the cases just cited are thought distinguishable in the fact that the leases there involved were "or" leases, it would seem enough to say that, in view of the ambiguity thus resulting, we think appellants bound by the practical construction placed upon the agreement in the acceptance of payment for the two preceding years, made, in each case, shortly before the expiration of the then current year, followed, as it was, by notice to appellees to proceed with development before January 26, 1920, on which the appellees acted.

[3, 4] We thus come to consider whether appellants were entitled to have the lease canceled for breach of the implied covenant to use reasonable diligence in development. The notice demanded that appellees proceed to develop within two months and seven days thereafter. Suit to cancel was begun in about three and one-half months after the date set by the notice for commencing development. As already said, appellees before that date brought on the ground some materials for drilling, and a week after the date set in the notice actually began development, the extent whereof has already been stated.

The burden was on appellants to show that in fact appellees had not exercised due diligence, and that the time required for beginning development was reasonable. Lyon v. Union Gas & Oil Co. (C. C. A. 6) 281 Fed. 674, 678. Appellants could not arbitrarily determine what was reasonable time. McNutt v. Whitney, supra, at page 136 (232 S. W. 388). Appellants' criticisms of failure diligently to prosecute development include alleged failure to drill as many wells as needed to secure the oil, by way of offset wells and otherwise, especially in view of the development on adjoining tracts, and the removal (during the pendency of this suit) of the machinery to another tract, thereby suspending development on the premises here in question for some months. Detailed statement of the specific contentions made and the answers thereto would benefit no one. The District Judge held that there was no room to claim that appellees could reasonably have begun drilling sooner than they actually did; that appellants made no objection to the progress made on the two wells completed before suit was begun, and that appellees were justified after suit begun, and under the existing circumstances, in temporarily moving the machinery to other premises.

Giving the required force to the conclusions of the trial judge on these questions of fact (In re Snodgrass [C. C. A. 6] 209 Fed. 325, 126 C. C. A. 251; Carey v. Donohue [C. C. A. 6] 209 Fed. 328, 333, 126 C. C. A. 254), we have no difficulty in accepting them, especially in view of the testimony of the activities of appellant Roscoe Miller, with reference to the drilling and development, as well as those of appellant Adkins, concerning the drilling of certain of the wells on an adjoining tract, claimed by appellants to have called for further offset wells. To say the least, the evidence does not clearly preponderate

against the trial judge's conclusions. The case on its merits is quite unlike that involved in Lyon v. Union Gas & Oil Co., supra.

No order for accounting is called for. Presumably such accounting will readily be had. The affirmance of the decree below would not prejudice the right thereto. These conclusions make it unnecessary to consider appellees' motion to dismiss the appeal because of alleged ratification by appellants since the trial, in connection with division orders. The decree of the District Court is affirmed.

In No. 3784 the general situation is similar to that in No. 3785. The terms of the leases are in all material respects the same. The Sparks lease was made January 26, 1916; the first payment of rental was made January 15, 1918; the second payment, January 15, 1919. An offer of payment on January 15, 1920, was refused. October 4, 1919, notice to proceed with development before January 26, 1920, was given. March 18, 1920, while appellees were in the act of drilling the first well, appellant Adkins notified appellees to make no further development.

[5] What we have said in No. 3785 sufficiently disposes of all the questions of law raised in the instant case except two. Appellants contend that the notice of October 4, 1919, was at most merely a license to drill one well. We see no merit in this proposition in view of the rights of the parties otherwise under the lease, and the history up to the time of the notice last mentioned. The other proposition, viz. that estoppel cannot be predicated on the acceptance of the two annual rental installments, because not pleaded, impresses us as equally without merit. The petition alleges the fact of the two payments; their acceptance as payments for the respective current years is naturally implied from the pleading. The answer denied that the nonpayment of rental before the expiration of twelve months from January 26, 1916, violated any condition of the lease, or that because of such nonpayment the lease became null and void. The effect of such acceptance of rent does not necessarily rest upon technical estoppel, but rather upon practical construction of an ambiguous contract. However, appellants having set up the facts cannot well complain of their application. Ironton v. Harrison Co. (C. C. A. 6) 212 Fed. 353, 357, 129 C. C. A. 29.

[6] Upon the merits: The trial judge held that it did not appear that defendant failed to commence to drill the first well as soon as it reasonably could have done after the notice of October 4, 1919, and that appellants are in no position to complain of want of reasonable diligence after the drilling of the first well, even if there were such, because they were claiming that appellee had no right to develop at all and were forbidding it to develop further. We accept these conclusions. The judgment of the District Court is accordingly affirmed.

In No. 3789 there is no contention that the lease was invalid or that development was not commenced within the proper time. The criticism is that the development was not continued and completed. The trial judge, without passing upon the question whether the delay to make further development was justified, found that appellees had, with plaintiff's consent, developed a well which at the time of the hearing was producing oil in paying quantities, and from which appellants had

received as much as $1,900 in royalties, and that the failure to further develop was with appellant's acquiescence. "They never notified defendant to further develop, but called on it to get out." The judge thought this action was taken so that appellants "can get the entire product from this well and can lease the balance as they desire." An amended and supplemental answer, tendered and permitted to be filed since the hearing, asserts that since the taking of evidence appellee has drilled another producing well, and that it intends to continue development, if permitted so to do by the decree herein.

We think the decree dismissing appellants' bill should not be disturbed. The decree is accordingly affirmed.