In re BUNKER HILL COUNTRY CLUB.
ROWELL et al. v. ROBBINS.
Nos. 6629, 6656.

Circuit Court of Appeals, Seventh Circuit.
Nov. 2, 1938.

---

[1] Rodier v. Huddell, 232 App.Div. 531, 250 N.Y.S. 336, 339.

Charles L. Barrett and Gilbert F. Wagner, both of Chicago, Ill., for appellants.

Walter Brewer and Edward J. Farrell, both of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

On June 21, 1935, Bunker Hill Country Club, a Corporation, filed its voluntary petition under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and on the same day an order was entered approving the petition as properly filed. The appellee, Sol G. Robbins was appointed temporary trustee February 28, 1936, which appointment was made permanent April 15, 1936. The Corporation had as its object and purpose the operation and maintenance of a golf club and the trustee was authorized by the court to operate the property during bankruptcy as a going business. Having failed in its effort at reorganization, an order was entered May 7, 1937, adjudging it a bankrupt and ordering liquidation. The matter was referred generally to a referee. On the same day appellee was appointed receiver for said corporation and June 16, 1937, was elected trustee in bankruptcy. June 28, 1937, appellee, as such trustee, filed his petition for leave to solicit bids and to sell assets upon ten days' notice to creditors, at which time hearing thereon was set for July 12, 1937. After ten days' notice to creditors, a sale was had on July 12, 1937, at which Arthur J. Strassheim became the purchaser for the sum of $10,000 of appellee's right, title and interest, subject to any and all liens and encumbrances of every kind, nature or description. A report of sale was made to which no objections were filed. July 16, 1937, the court entered an order approving said report and directing the sale and conveyance of said property to Strassheim. After sale the property was operated by the purchaser as the Wooded River Country Club.

Commencing in December, 1936, and continuing to a few days prior to the sale, appellee solicited and enrolled as members of said club the forty-five appellants who are consolidated as appellants in this cause. The membership fees charged were not uniform in amount and varied from $75 to $152.50. Each of the appellants received a membership card entitling him to the uses and enjoyments of the club for the year 1937, signed "S. G. Robbins, Managing Trustee." Three days after the sale, the purchaser, then in possession as such, closed the club and premises and refused to permit appellants to have or enjoy the uses and benefits of the club house, golf course and other properties of the bankrupt under their respective memberships purchased and acquired as aforesaid. Notices were posted on the club premises advising that they were "closed to members" and appellants were directed to remove their golf clubs and personal effects. Appellants were solicited to rejoin the new club known as Wooded River Country Club, organized by Strassheim, upon the payment of an additional sum of $60 for the balance of the 1937 season. Twenty-one of the appellants did so and were permitted to continue their use of the club during the remainder of the season.

Thereafter, appellants joined in filing four petitions in which the facts as stated were alleged and prayed for the repayment of all or part of the money paid to appellee, and that such be allowed as preferred claims. Appellee answered said petitions and admitted all, or substantially all, of appellants' allegations, but denied that appellants were entitled to any reimbursement. The matter was referred to a referee who found and so reported that appellants were not entitled to recover in whole or in part. It seems the referee based his conclusion on the theory that appellants made or could have made satisfactory arrangements with Strassheim for the use of the club during the remainder of the season, and that inasmuch as the sale was made subject to all liens and

encumbrances, the right of recovery, if any, existed against the purchaser at said sale, he having purchased the property with knowledge of said memberships. Appellants filed petitions to review the orders of the referee and the court on April 1, 1938, approved and confirmed the same. It is from this order the appeal is taken.

Appellee, while denying all liability, seemed to proceed on the theory that if appellants were entitled to recover, it was the pro rata value of the time from the date of sale, namely July 16, 1937, to the end of the golf season for that year. Appellee sets forth in his answer not only the amounts paid by the respective appellants for memberships, but the pro rata amount of the unearned portion of the same from the date of the sale to the end of the golf year. These respective amounts varied from $45.85 to $74.25, depending upon the amount paid for the respective memberships, as well as the time.

■ We are convinced that appellants presented a justifiable cause of complaint and were entitled to be reimbursed, at least to the extent they were damaged by the actions of the trustee. We doubt if the court was advised of the existing situation, as it is inconceivable to us that an officer of the court should be permitted to act, in what appears to be, in utter disregard of the rights of those with whom he had entered into contractual relations without making any provision for their protection. We think the language used by the court in Farmers' Loan & Trust Co. v. Eaton et al., 8 Cir., 114 F. 14, is pertinent, notwithstanding the court there was speaking of a receiver. On page 16 it is said: "And no reason occurs to us why a judicial tribunal which has power to authorize a receiver to enter into a contract should be exempt from the rule which obtains as between individuals. If anything, it would seem that courts ought to be more scrupulous in keeping their engagements, and more ready than private individuals to award damages, when, in the exercise of their powers, they find it necessary to violate agreements which they have unwittingly made through their receivers." True, it is claimed appellants' contracts were protected by selling the property "subject to liens and encumbrances." This rule, in our judgment, is not applicable to the instant situation and the cases cited by appellee are not in point. For instance, In re North Star Ice & Coal Company, D.C., 252 F. 301, is a case where a mortgagee filed a secured claim in a bankruptcy proceeding and objected to a sale being made by the trustee of the bankrupt's equity and subject to liens. The objection was overruled and the property sold subject to such lien on the theory that the mortgagee would not be injuriously affected by the sale of the bankrupt's interest.

In the matter before us, we think that appellants had no lien which could be protected in such manner. They merely acquired a membership in the club which gave them the privilege of its use for the golf season of 1937. For aught which appears in this record, the purchaser might, if he so desired, have used the premises acquired at the sale as a cow pasture. He was under no obligation to maintain the porperty for the purpose for which appellants had paid their money, and neither was any provision made for a refund. It is contended, and so found by the referee that any rights which appellants have are against the purchaser. That question is not before us, but even so, the fact remains that appellants had acquired from appellee a privilege and that the property was sold without, in any way, providing for its exercise.

■ Having determined that the court was in error in denying the claims of appellants in toto, we are still presented with the troublesome question as to the amount which each of the appellants is entitled to recover. It seems to us there could be no good reason for allowing the amount which they had paid for their respective memberships for the reason that they were permitted to enjoy the privilege purchased up until the time of the sale of the property. It seems it would be more reasonable to hold they were entitled to be reimbursed for the worth of that part of the privilege of which they were deprived, and while there was no testimony as to such value, yet twenty-one of appellants were permitted to exercise the privilege of the club after the sale upon the payment of the sum of $60, and it seems to us this may be used as a yard stick in fixing the value of the unexpired portion of their membership contracts. It is evident all of appellants could have used the club after the sale upon the payment of said amount. We do not see how it could make any difference whether a member paid $75 or $150 for a season's membership, or whether he purchased that membership in the preceding season or early in the year 1937; his measure of damages would be no different.

We therefore conclude that each of appellants should be allowed a prior and preferred claim in the amount of $60 to be paid from the bankruptcy estate.

The order is reversed with costs.